## STATE OF HAWAII *v.* RICHARD BARRY ROCKER AND JOSEPH CAVA.

### No. 4898.

OCTOBER 21, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND
CIRCUIT JUDGE OGATA IN PLACE OF
KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendants-appellants, having waived a jury trial, were tried in the circuit court of the second circuit and found guilty as charged for violation of HRS § 727-1 for creating a common nuisance. The complaint read: "That Richard Barry Rocker and Joseph Cava [defendants] at Puu Olai, Makena, District of Makawao, County of Maui, State of Hawaii, on the 26th day of February, 1969, did openly sunbathe in the nude, which was offensive and against common decency or common morality, thereby committing the offense of common nuisance, contrary to the provisions of Section 727-1 of the Hawaii Revised Statutes."

It is undisputed that on February 26, 1969, police officers of the Maui Police Department received a phone call from an anonymous person and, thereafter, on the day of the call, proceeded to the Puu Olai beach at Makena to look for nude sunbathers. On reaching their destination, the police surveyed the beach from a ridge using both their naked eyes and binoculars and saw the defendants lying on the beach completely nude, one on his stomach and the other on his back. The officers then approached the defendants and arrested them for indecent exposure. It was admitted by the police officers that defendants were not at any time engaged in any activity other than sunbathing. At the time of the arrest there were several other people on the beach where the defendants were nude. Defendant Rocker was nude at the Puu Olai beach on other days before and after he was arrested on February 26, 1969. Defendant Cava likewise frequently sunbathed in the nude at the same beach prior to his arrest on February 26, 1969.

## I. *Indecent Exposure: Elements*

The first issue we are asked to decide on this appeal is whether defendants created a common nuisance by sunbathing in the nude on a public beach.

The statute (HRS § 727-1) reads as follows:

The offense of common nuisance is the endangering of the public personal safety or health, or doing, causing or promoting, maintaining or continuing what is offensive, or annoying and vexatious, or plainly hurtful to the public; or is a public outrage against common decency or common morality; or tends plainly and directly to the corruption of the morals, honesty, and good habits of the people; the same being without authority or justification by law:

As for example: * * *

* * * * * * :

Open lewdness or lascivious behavior, or indecent exposure;

* * *

HRS § 727-1, unlike statutes of most states, incorporates indecent exposure as an example of what the legislature has defined to constitute common nuisances. The statute does not specifically delineate the elements of the crime of indecent exposure, and although reference to the common law or to cases decided in other jurisdictions based upon statutes different from ours may be helpful, neither is controlling.[1] The question of whether sunbath-

---

[1] It should be noted that the Hawaii Penal Code (Proposed Draft) 1970 adopts the American Law Institute Model Penal Code classification and definition of indecent exposure. It is classified as a sexual offense and is defined as follows:

(1) A person commits the offense of indecent exposure if, with intent to arouse or gratify sexual desire of himself or of any person, he exposes his genitals to a person to whom he is not married under circumstances in which he knows his conduct is likely to cause affront or alarm.

(2) Indecent exposure is a petty misdemeanor.

See Hawaii Penal Code (Proposed Draft) 1970, Chapter 7, Part V, Section 738.

This classification and definition of the crime of indecent exposure takes it out of the realm of common nuisances and makes it a specific sexual offense.

ing in the nude on a public beach is punishable as a common nuisance is one of construction of our statute.

In *Territory v. Martin,* 14 Haw. 304 (1902), the first Hawaii case to interpret the indecent exposure provision of the common nuisance statute, the defendant indecently exposed himself to a girl twelve years old behind a pile of lumber, but near a public road and in view of anyone who might pass along the road. In answering the question of whether the exposure to be punishable as a common nuisance must be to or in the view of more than one person, the court stated:

> The legislature has itself cited indecent exposure as an example of what it sought to define as common nuisances in the first paragraph of section 324 [now 727-1]. In our opinion when the indecent exposure is in a public place where it may be seen by others if they pass by, it is such as is contemplated by the statute even though it is actually seen by one person only. *Territory v. Martin, supra* at 305.

We are in accord with this construction of the statute. To create a common nuisance there must be an indecent exposure of the person in a public place where it may be seen by others if they pass by, and it need actually be seen by one person only.

However, to answer the specific questions presented to us on this appeal and to clarify and examine our construction of the statute in light of recent decisions in this and other jurisdictions, a further discussion of the elements of the crime of indecent exposure is needed.

A. *Intent*

Sunbathing in the nude is not per se illegal. It must be coupled with the intent to indecently expose oneself. Intent is an element of the crime of common nuisance defined by HRS § 727-1. *The King v. Grieve,* 6 Haw. 740

(1883). The intent necessary is a general intent, not a specific intent; *i.e.*, it is not necessary that the exposure be made with the intent that some particular person see it, but only that the exposure was made where it was likely to be observed by others. Thus, the intent may be inferred from the conduct of the accused and the circumstances and environment of the occurrence. *Messina* v. *State*, 212 Md. 602, 606, 130 A.2d 578, 580 (1957); *Peyton* v. *District of Columbia*, 100 A.2d 36, 37 (D.C. Mun. App. 1953); *State* v. *Martin*, 125 Iowa 715, 101 N.W. 637 (1904). The criminal intent necessary for a conviction of indecent exposure is usually established by some action by which the defendant either (1) draws attention to his exposed condition or (2) by a display in a place so public that it must be presumed it was intended to be seen by others. *Hearn* v. *District of Columbia*, 178 A.2d 434, 437 (D.C. Mun. App. 1962); *Peyton* v. *District of Columbia*, *supra* at 37; *Messina* v. *State*, *supra*. *See also* Comment, 33 Mich. L. Rev. 936, 937 (1935).

The defendants argue that there is no circumstantial evidence in the record from which a trier of fact could conclude that the element of intent had been proved beyond a reasonable doubt. The issue, therefore, is whether defendants' nude sunbathing at Puu Olai beach at Makena, Maui, was at a place *so public* that a trier of fact could infer it was intended to be seen by others. The prosecution offered testimony of one of the arresting police officers that the beach was a popular location for fishermen and was in fact one of his favorite fishing spots. Defendants testified that the public in general used the beach, that it was used by fishermen and local residents, and that they observed between 20 and 25 people on the beach over a two-month period. Although the Puu Olai beach is isolated by a hill and a ledge, away from the view of the public road and adjoining beaches, it is accessible by a

well-worn path and known to be a favorite location of fishermen to cast and throw fish nets. In view of this and other evidence in the record, we cannot agree with defendants' argument that the trier of fact could not find the beach so public as to justify an inference of intent on the part of defendants to be seen by others.

## B. *Public Place*

The place is a public one if the exposure is such that it is likely to be seen by a number of casual observers. *Van Houten* v. *State,* 46 N.J.L. 16, 17 (1884) *Messina* v. *State, supra,* 212 Md. 602, 605, 130 A.2d 578, 579 (1957). What constitutes a public place depends upon the circumstances of the case. *Messina* v. *State, supra* at 579.

Whether or not the place is owned by the State or whether or not the accused believes he is sunbathing in the nude in a remote area does not determine whether the place is "public" or "private". Each case must be decided upon its own facts, and the trier of fact is justified in finding the place public if the exposure is such that it is likely to be seen by a number of casual observers. There is substantial evidence in the record before us to support such a finding.

## C. *Number of Witnesses*

The cases are not in absolute agreement as to the number of witnesses that must be present to see the act. The old English cases generally held that since the offense is in the nature of a nuisance, the rule is that a nuisance must be public; that is, to the injury or offense of several. *The Queen* v. *Watson,* [1847] 2 Cox Crim. Cas. (Eng.) 376. *See also Reg.* v. *Farrell,* [1862] 9 Cox Crim. Cas. (Ire.) 446; *State* v. *Wolf,* 211 Mo. App. 429, 244 S.W. 962 (1922).

On the other hand, early American common law cases hold that the likelihood that the act may be seen by a number of casual observers is sufficient. *State* v. *Goldstein,* 72 N.J.L. 336, 62 A. 1006 (1906) (*affirmed without opinion* in 74 N.J.L. 598, 65 A. 1119 (1907)); *Van Houten* v. *State,* 46 N.J.L. 16 (1884).

The determining factor in recent American cases appears to be the individual wording of the applicable statute. These cases indicate that the most common requirement in the proof of the offense is a showing that one person saw the exposure and that at least one other person either saw it or might have seen it if he had looked. *Green* v. *State,* 106 Ga. App. 485, 127 S.E.2d 383 (1962); *Austin* v. *State,* 104 Ga. App. 795, 122 S.E.2d 926 (1961). "It has been held that the offense does not depend upon the number of people present and, that an intentional act of lewd and indecent exposure to one or more persons is sufficient to make out a case. . . ." *Davison* v. *State,* 281 P.2d 196, 197 (Okla. Crim. App. 1955). *See Messina* v. *State, supra,* 212 Md. 602, 130 A.2d 578 (1957).

*Territory* v. *Martin,* 14 Haw. 304 (1902), (discussed *supra*) is consistent with the recent decisions with regard to the number of witnesses required to see the act. To reiterate, the court stated that the ". . . indecent exposure . . . in a public place where it may be seen by others if they pass by . . . is such as is contemplated by the statute even though it is actually seen by one person only." As discussed earlier, we are in agreement with this construction of the statute.

Furthermore, it is important to remember that the gravamen of the offense charged is the creation of a common nuisance. In establishing the misdemeanor of a common nuisance, it is not necessary that annoyance to or injury of any one person be shown, for it is interference with the rights of the general public and not individuals

which is the criterion of a public nuisance. 2 Wharton, Criminal Law and Procedure § 821. The fact that no one testified to being shocked or offended by defendants' nude sunbathing does not necessarily mean the exposure was not indecent or did not constitute a common nuisance. The common sense of the community, as well as the sense of decency, propriety and morality, which most people entertain, must be the guide in each case in determining whether a common nuisance exists and HRS § 727-1 has been violated.

It is common knowledge and this court will take judicial notice that the great majority of the people using the beaches on Maui are always clothed in bathing suits. It is indeed rare to find anyone completely nude on any of the public beaches on Maui. The fact that the defendants sunbathed nude on a public beach without respecting the rights and beliefs of others and realizing that other people besides themselves visited the beach from time to time demonstrates the defendants' unreasonable belief that their acts under the circumstances of this case were not likely to offend members of the general public.

## II. *Right of Privacy*

The second issue raised on this appeal is whether a person has a right of privacy to the extent of sunbathing nude on a public beach. Defendants claim their rights guaranteed by Article I, sections 2, 4 and 5 of the Constitution of the State of Hawaii, as amended in 1968, have been violated. Section 5 of Article I of the Hawaii Constitution, like the Fourth Amendment of the United States Constitution, guarantees the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures. Unlike the United

344

States Constitution, the Hawaii Constitution also specifically guarantees its citizens the right of privacy.

Defendants rely heavily upon *Katz* v. *United States,* 389 U.S. 347 (1967) and *State* v. *Matias,* 51 Haw. 62, 451 P.2d 257 (1969) in contending that their right of privacy had been violated. The Court in *Katz* stated that the protection of one's privacy is no longer dependent upon whether an area is public or private but rather upon whether or not the area is one which a person could reasonably expect to be free from governmental intrusion. *Katz* is distinguishable. In *Katz* the Court protected the defendant's justifiable reliance to expect privacy while using a telephone booth, and a telephone booth is easily distinguishable from a public beach which rightfully belongs to and is subject to the use of the general public.

Similarly, this court in *Matias* stated that the defendant's right to reasonably expect freedom from governmental intrusion is not dependent upon his ownership of property but a "protectable right . . . wherever he may legitimately be and reasonably expect freedom from governmental intrusion." *State* v. *Matias,* 51 Haw. 62, 66, 451 P.2d 257, 259 (1969). Likewise, *Matias* is distinguishable from the case at bar in that it involved the search of the balcony of an apartment used by the guest of a tenant. The court ruled that a guest of a tenant is entitled to a right of privacy. The balcony of an apartment is not a public beach. A public beach is not protected from freedom of intrusions or visits by the general public.

This court recognizes each individual's constitutional right of privacy and right to be let alone. *Griswold* v. *Connecticut,* 381 U.S. 479 (1965); *Stanley* v. *Georgia,* 394 U.S. 557 (1969). This right protects a person from any unreasonable governmental search, seizure or invasion of privacy, but this right does not entitle an individual to do as he pleases in violation of the rights of others.

We therefore cannot agree with defendants' claim to the right of exclusive privacy on a public beach which belongs to the citizens of this State. The defendants were not justified in believing that because the beach was located on a far end of the island and because they had used it for some time without interference or complaint, that police officers or other persons would not see them on the beach, or would not be offended, or that they were therefore absolutely protected against such "intrusion". The beach was frequented by members of the public, and the police officers, in seeing defendants sunbathing nude on a public beach and arresting them for violation of HRS § 727-1, did not violate defendants' constitutional right of privacy.

### III. *Motion for Acquittal: Test on Appeal*

The third issue raised on this appeal is whether the trial court erred in denying the defendants' motion for judgment of acquittal at the end of the prosecution's case. Rule 29(a), Motion for Judgment of Acquittal, of the Hawaii Rules of Criminal Procedure states in relevant part:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

This rule requires the trial court judge either upon a motion of a defendant or of its own motion to enter a judgment of acquittal if at the end of the prosecution's case there is not sufficient evidence to support a prima facie case. The test that must be applied whenever a trial judge is compelled to determine whether the prosecution

has presented sufficient evidence to withstand a motion for acquittal is well stated in *Curley* v. *United States,* 160 F.2d 229, 232 (D.C. Cir. 1947), *cert. denied,* 331 U.S. 837 (1947):

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt....

This court will not disturb the ruling of a lower court if the evidence of the prosecution is such that "a reasonable mind might fairly conclude guilt beyond a reasonable doubt." As discussed under section I of this opinion, the elements of the crime of indecent exposure that the prosecution must prove in order to establish a prima facie case against the defendants are that (1) the defendants expose themselves, (2) in a public place where it may be seen by others and (3) under circumstances that a trier of fact could infer a general intent of the defendants to offend the community's common sense of decency, propriety, and morality.

At the close of the prosecution's case it had been established that the defendants were seen by two police officers sunbathing in the nude at Puu Olai beach, a beach isolated by a hill and a ledge but accessible by a well worn path. One of the officers testified that the beach was a popular location for fishermen and was in fact one of his favorite fishing spots. From these facts the trial judge ruled that a prima facie case had been established and denied the defendants' motion for acquittal. We affirm this ruling. There was sufficient evidence at the close of the prosecution's case to justify an inference beyond a reasonable doubt that the Puu Olai beach was so public that the

defendants could be attributed with the necessary knowledge to know that their acts under the circumstances were likely to offend members of the general public.

### IV. *Verdict: Test on Appeal in Criminal Cases.*

The fourth issue raised by defendants deserves only brief treatment. They argue that the trial judge applied an erroneous legal test in reaching his decision at the close of the case when he stated:

> One of the things that bothers me about this case— and this is a very close case either way— . . .

Defendants believe that if the trial judge felt the case was "close" that his decision should have been for acquittal. In other words, the State has not met its burden of proof in a criminal case of proving guilt beyond a reasonable doubt. *State v. Hale,* 45 Haw. 269, 367 P.2d 81 (1961).

The test on appeal is whether there is substantial evidence to support the verdict. *State v. Kekaualua,* 50 Haw. 130, 132, 433 P.2d 131, 133 (1967). The evidence presented at the trial of the case at bar shows that there was substantial evidence to support the decision. The fact that the court stated that this was a "close" case does not expunge or dispose of the substantiality of evidence showing that the defendants had sunbathed in the nude on a public beach visited by members of the public. The State has met its burden and this court will not disturb the ruling of the lower court if there is substantial evidence to support the verdict. *State v. Kekaualua, supra,* 50 Haw. at 132, 433 P.2d at 133.

Affirmed.

*Sanford J. Langa,* attorney for appellant.

*Ernest K. C. Ching,* Deputy County Attorney, County Attorney, County of Maui (*Kase Higa,* County Attorney with him on the brief), for appellee.

I dissent because I think that the evidence adduced by the government at the close of the prosecution's case was insufficient to sustain a conviction of either defendant. The trial judge erroneously denied the defendants' motion for acquittal made at that time. My view of the role that the motion for acquittal plays in the criminal process leads me to conclude that in reviewing a denial of such a motion, the appellate court should consider only the record as it existed when the motion was made. The majority opinion appears to concur in this view. However, it does so without any discussion of the important constitutional and policy considerations which I believe require the adoption of this standard of review. Thus I feel compelled to begin by stating the basis for my belief that this standard of review is the only effective means of ensuring that the motion for acquittal fulfills its proper role in the criminal process. I shall then analyse the evidence in the record at the close of the prosecution's case, indicating why I believe it to be insufficient to establish a prima facie case against either defendant.

## I. THE IMPORTANCE OF THE MOTION FOR ACQUITTAL AS A GUARDIAN OF DEFENDANTS' RIGHTS IN THE CRIMINAL PROCESS.

In our system of law the privacy of the individual is entitled to protection from unwarranted government interference. The guarantees found in both the Hawaii and Federal Constitutions admonish the government to move in a highly circumspect manner when instituting criminal proceedings against the individual. Article I, sec. 5 of the Hawaii Constitution, as amended in 1968, contains the following guarantee:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable

searches, seizures, and *invasions of privacy* shall not be violated; ... (emphasis added).[1]

Moreover, the State may not use inquisitorial methods in its relations with its inhabitants. It is prohibited from using any form of compulsion to exact incriminating evidence from a person accused of a crime.[2] These safeguards clearly exhibit the deep concern which our society displays for the dignity of the individual. As Mr. Justice Brandeis said in his now famous dissenting opinion in *Olmstead* v. *United States,* 277 U.S. 438, 478 (1928), they confer, "as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men."

Affirming this right of the individual to be "let alone" are the concepts in Anglo-American criminal law that even when the State has undertaken to move against the individual, the law presumes him to be innocent and that this presumption is not overcome until the State proves him to be guilty beyond a reasonable doubt. A recent Supreme Court decision has held this reasonable doubt standard to be constitutionally mandated, recognizing that it "provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In re Winship,* 397 U.S. 358, 363 (1970). See also *State* v. *Dias,* 52 Haw. 100, 109, 470 P.2d 510, 515 (1970), *citing In re Winship,* and HRS § 705-2. It is within the context of the value system embodied by the ideas of presumption of innocence and proof beyond a reasonable doubt that we must view the role played by the motion for judgment of acquittal.

The motion for acquittal is governed by rule 29(a) of

---

[1] *See also,* United States Constitution, amendment IV.

[2] Hawaii Constitution, article I, section 8; United States Constitution, amendment V.

the Hawaii Rules of Criminal Procedure, which provides, in relevant part:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

A simple reading of this rule clearly indicates that it was meant to be a primary device for implementing the safeguards embodied in the concepts of "presumption of innocence" and "proof beyond a reasonable doubt."

Rule 29(a) empowers the trial judge to raise the motion for acquittal on his own initiative, thus demonstrating that a defendant's right not to be vexed with prosecutions founded upon inadequate evidence should not be lost merely because his attorney fails to make the motion. In this context, the trial judge is not a mere arbiter between adversaries. He may act independently when it becomes apparent that the State has failed to prove its case. Of course, in the present case, the attorney for the defendants did make the appropriate motion.

The rule speaks in mandatory terms, the court "shall" order the entry of judgment of acquittal, again pointing to the importance of the trial judge's role in screening a defendant from cases not fit for trial. As I indicated in my concurring opinion in *State* v. *Stuart,* 51 Haw. 656, 667, 466 P.2d 444, 450 (1970) the trial judge may not reserve his ruling on the motion when it is made at the close of the prosecution's case. All this attests to the fact that the motion for a judgment of acquittal was not meant to be a neglected safeguard in protecting a defendant's right not to be harrassed by improvidently brought prosecutions.[3]

---

[3] *See generally,* Note, *The Motion for Acquittal: A Neglected Safeguard,* 70 Yale L.J. 1151 (1961); State v. Stuart, 51 Haw. 656, 664, 466 P.2d 444, 448 (1970) (concurring opinion).

## II. THE MOTION FOR ACQUITTAL WILL NOT FULFILL ITS PROPER ROLE IN THE CRIMINAL PROCESS UNLESS THERE IS EFFECTIVE APPELLATE REVIEW OF ITS DENIAL.

In reviewing a trial court's denial of a motion for judgment of acquittal some appellate courts consider all the evidence in the record, even that introduced after the erroneous denial of the motion.[4] This practice severely dilutes the effectiveness of the motion as a guardian of the defendant's right to require that the State prove every essential element of its case before he is put to his defense.

The advocates of this practice, in effect, have taken a rule of law applicable in civil cases and applied it in a criminal context. The rule in civil cases was stated by this court in *Low* v. *Honolulu Rapid Transit Co.*, 50 Haw. 582, 585, 445 P.2d 372, 375 (1968) as follows:

> [W]hen a defendant unsuccessfully moves for dismissal under Rule 41(b), and thereafter elects to continue with the trial, he thereby waives the right on appeal from the final judgment to specify as error the denial of his motion. The only method by which the validity of the adverse ruling on the motion may be considered on appeal is for the defendant to stand on his motion and permit a final judgment for the plaintiff to be entered on that state of the record. If a defect in the plaintiff's proof prior to the denial of the motion to dismiss is later cured by either party, any error in the denial of the motion is harmless error.

It is entirely inappropriate to apply the above rule to a review of a motion for acquittal in criminal cases. The values underlying the criminal process are unique; they are qualitatively different from those embodied in the civil practice of law. Unlike the motion for acquittal in a

---

4 See Note, *supra*, note 3 at 1152, n.9 (citing cases).

criminal trial, the motion for dismissal in a civil suit does not find its justification in the common law tradition of presumption of innocence.[5]

The demands of our system of criminal justice were well articulated by Mr. Justice Frankfurter in *Watts* v. *Indiana,* 338 U.S. 49, 54 (1949), when he stated:

> Ours is the accusatorial as opposed to the inquisitorial system.... Under our system society carries the burden of proving its charge against the accused not out of his own mouth. It must establish its case, *not by interrogation of the accused even under judicial safeguards, but by evidence independently secured through skillful investigation.* (Emphasis added.)

The application of the civil rule to criminal cases violates this principle by permitting an appellate court to lay hold of a defendant's own testimony, testimony that he ought never to have been required to give in order to sustain the wrongful ruling of the trial court. *State* v. *Bacheller,* 89 N.J.L. 433, 436, 98 A. 829, 830 (1916). I reject the use of the civil "waiver" doctrine in criminal cases because its use in criminal cases violates the basic principle of our system of law that the criminal apparatus of the government should not be permitted to move against the individual until the prosecutor can prove guilt extrinsically, without relying upon the accused.[6]

Applying the civil practice to criminal cases greatly undermines the effectiveness of the motion for acquittal by removing the pressure which the motion places on the

[5] By way of contrast it is worth noting that H.R.C.P., Rule 41(b), governing the order for dismissal in a civil suit, makes no provision for the court to grant the dismissal on its own initiative. In addition, the court is specifically empowered to decline to make a ruling until after the close of all the evidence.

[6] Cephus v. United States, 324 F.2d 893 (D.C. cir. 1963); United States v. Rizzo, 416 F.2d 734, 736 n.3 (7th cir. 1969); *see also,* A. Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure,* 69 Yale L.J. 1149, 1161 (1960); Note, *The Motion for Acquittal: A Neglected Safeguard,* 70 Yale L.J. 1151, 1159-60 (1961).

trial judge to enforce strictly the defendant's right to an immediate acquittal when it is apparent the State has failed to prove a prima facie case. The pressure is removed because the likelihood of effective appellate review of the motion's denial is severely lessened by the civil rule. In order to make the motion for acquittal an effective guardian of a defendant's rights I would hold that in reviewing a denial of the motion, made at the close of the prosecution's case, an appellate court should look only to the evidence theretofore introduced by the prosecution.

III. THE EVIDENCE ADDUCED BY THE GOV-ERNMENT AT THE CLOSE OF THE PROSE-CUTION'S CASE WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF THE OFFENSE CHARGED.

Before proceeding to my analysis of the insufficiency of the evidence offered by the prosecution I feel compelled to state the facts in the record at the close of the prosecution's case. I do this because I believe that the majority has failed to segregate clearly the prosecution's evidence from that offered by the defense and has omitted stating a key fact which I believe raises a reasonable doubt as to the defendants' guilt.

A. *The Evidence in the Record at the Close of the Prosecution's Case-in-Chief.*

The State's case consisted solely of the testimony of the two arresting police officers. They both testified that the Puu Olai beach is isolated by a hill and a ledge, away from the view of the public road and adjoining beach. The beach is accessible by two trails. One is a well-worn path leading over the hill. The other is a trail on the Wailuku side of the beach, which is not well-used and connects

the beach to a small road. The officers testified to being able to see, with the naked eye, the nudity of the defendants, from the crest of the hill.

One of the officers, George Matsunaga, testified that this beach was one of his favorite fishing spots and that it was a popular location for other fishermen. He also stated that the fishermen went to the beach in the "day or night." On examination by the court, Officer Matsunaga admitted that he had never seen the beach used for picnics or family recreation, and the only non-fishermen that he recalled having observed on this beach were what he called "hippie type characters." It was on this evidence alone that the State rested its case.

### B. *Intent to be Seen by Others.*

My reading of the majority opinion leads me to conclude that in order to prove a prima facie case against the defendants it was necessary for the prosecution to demonstrate that the defendants possessed a general intent to expose themselves in a place where it would be likely that they would be observed by others. To prove this, it would be enough for the prosecution to establish the defendants' awareness of sufficient facts and circumstances from which a trier of fact could infer such intent beyond a reasonable doubt. From the evidence in the record at the close of the prosecution's case I do not think that a trier of fact could be justified in inferring beyond a reasonable doubt that the defendants possessed the necessary general intent to be seen by others.[7]

---

[7] The majority opinion adopts the "reasonable doubt" standard discussed in my concurring opinion in State v. Stuart, 51 Haw. 656, 667; 466 P.2d 444, 450 (1970) to test the sufficiency of the evidence adduced by the prosecution to withstand the defendants' motion for acquittal made at the close of the prosecution's case. Unfortunately, the majority then goes on to use the vaguer "substantial evidence" test in reviewing the sufficiency of the evidence at the conclusion of the trial to support the verdict. For the reasons set forth in my concurring opinion in

Although there was testimony that the beach was visited by fishermen there was no link established between the visits by the fishermen and visits to the beach by the defendants. Officer Matsunaga, one of the fishermen who used the beach, did not testify to ever having observed the defendants on this beach prior to arresting them. Thus, this evidence could not be used to support an inference that the defendants were aware that this beach was used by fishermen and therefore public.

Nor could a trier of fact infer beyond a reasonable doubt that the defendants were aware of the "well-worn" path leading over the hill to the beach and therefore knew that they were sunbathing in an area readily accessible to the public. One of the police officers testified that the beach was accessible by another trail which was *not* "well-used." There was no other evidence that would eliminate as a reasonable doubt the possibility that the defendants had used this other path and therefore inferred from its unused nature that the public would not be likely to see them. The majority opinion does not mention this possibility in assessing the adequacy of the prosecution's case. In failing to prove that the defendants were aware of the visits of the fishermen or the well-worn path I believe the State failed to prove beyond a reasonable doubt defendants' awareness of facts sufficient to establish a general intent to be seen by others.

## C. *The Affront to the Moral Sense of the Community.*

In order to prove that the defendants were guilty of committing a common nuisance the prosecution had to show that the facts and circumstances surrounding the

State v. Butler. 51 Haw. 180, 186, 455 P.2d 4, 8 (1969), I believe that the majority should proceed to the next logical step and make it clear that "substantial evidence" is that evidence which would justify a reasonable trier of fact in finding that the defendants were guilty beyond any reasonable doubt.

defendants' conduct were such that the "sense of decency, propriety and morality which most people entertain" would be offended. The State elicited no testimony establishing that the beach was used by the general public and, in fact, there was testimony to the effect that the contrary was true. The evidence indicated that the only group of people who were likely to see the defendants were the fishermen who came to the beach to fish. Given the exclusive nature of the clientele frequenting this beach and the well-known general hardiness of spirit of men who enjoy the sport of fishing I do not see how one could conclude beyond a reasonable doubt that the moral sense of the community would be outraged by defendants' acts of nude sunbathing.

Since the prosecution failed to prove a prima facie case against the defendants the motion for acquittal was erroneously denied. I would reverse the convictions.