76 P.3d 935

STATE of Hawai'i, Plaintiff–Appellee,

v.

Llewelyn K. CHUN, Sr., Defendant–Appellant.

No. 22206.

Supreme Court of Hawai'i.

Sept. 25, 2003.

James M. Anderson, deputy prosecuting attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

Robert T. Nakatsuji, deputy public defender, on the briefs, for the defendant-appellant Llewelyn Chun, Sr.

MOON, C.J., LEVINSON and ACOBA, JJ., and Circuit Judge MILKS, assigned by reason of vacancy; and NAKAYAMA, J., dissenting.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Llewelyn Chun appeals from the judgment of the district court of the first circuit, the Honorable Les-

lie A. Hayashi presiding, entered on November 18, 1998,[1] regarding Chun's no contest plea to the charge of indecent exposure, in violation of Hawai'i Revised Statutes (HRS) § 707–734 (1993),[2] as a result of which the district court sentenced Chun to a six-month term of probation and ordered Chun, *inter alia*, to register under the sex offender registration and notification statute, HRS ch. 846E (Supp.1998).[3] Chun argues that the district court erred in requiring him to register under the sex offender registration and notification statute on the basis that HRS ch. 846E does not apply to persons convicted of indecent exposure, in violation of HRS § 707–734, *see supra* note 2. Alternatively, he argues that HRS ch. 846E violates: (1) the due process clauses of the United States and Hawai'i Constitutions; (2) the cruel and unusual punishment clauses of the United States and Hawai'i Constitutions; (3) the right to privacy, as guaranteed by the United States and Hawai'i Constitutions; and (4) the equal protection clauses of the United States and Hawai'i Constitutions.

For the reasons discussed *infra* in section III, we hold that indecent exposure, in violation of HRS § 707–734, does not constitute an offense subject to the sex registration and public notification requirements of HRS ch. 846E. Accordingly, we vacate the district court's sentence and remand the present matter for resentencing consistent with this opinion.

## I.  BACKGROUND

On August 27, 1998, Chun pled no contest to the charge of indecent exposure in viola-

tion of HRS § 707–734, *see supra* note 2, and moved for a deferred acceptance of his no contest plea (DANCP). The case was continued to November 18, 1998, at which time Judge Hayashi conducted a sentencing hearing. Chun addressed the district court and stated that he did not recall the conduct constituting the basis of the charge against him, but that he would do "whatever it takes" to make things better for the complainant and her family. The deputy public defender (DPD) explained that Chun had been drinking on the night of the incident, did not recall the incident, and was "shocked by ... the complainant's version of what happened[.]" The defense called as witnesses Chun's wife, his daughter-in-law, and his future daughter-in-law, who all testified on behalf of Chun's good character. The prosecution called the mother of the complainant as a witness, who testified that her daughter was not present, because she was "having a hard time dealing with what's happened to her." She stated to the court that she did not want Chun to be incarcerated, but that she wanted to ensure that "he does not do anything like this to my family or anybody else's family."

After hearing arguments from counsel, the district court denied Chun's motion for DANCP. In addition, the district court sentenced Chun to a six-month term of probation and ordered him to: (1) submit to a mental health assessment and undergo any treatment that might be prescribed; (2) write a note of apology to the complainant; and (3) register under the sex offender registration and notification statute, HRS ch. 846E. The record does not reveal the under-

---

1.  On August 25, 2003, an order was entered, Justice Acoba dissenting, temporarily remanding the present matter to the district court for the entry of a written judgment. The district court's written order denying defendant's motion for deferred acceptance of no contest plea, sentencing, and final judgment was filed on September 19, 2003.

2.  HRS § 707–734 provides:

    (1) A person commits the offense of indecent exposure if[ ] the person intentionally exposes the person's genitals to a person to whom the person is not married under circumstances in which the actor's conduct is likely to cause affront.

    (2) Indecent exposure is a petty misdemeanor.

3.  HRS § 846E–2(a) mandates in relevant part that "[a] sex offender shall register with the attorney general and comply with the provisions of [HRS ch. 846E] for life." The material aspects of HRS ch. 846E are discussed more fully *infra* in section III. In *State v. Bani*, 97 Hawai'i 285, 36 P.3d 1255 (2002), this court held, *inter alia*, that the registration components of HRS ch. 846E did not violate a "sex offender's" right to procedural due process but that the statute's public notification provisions, which did not afford a "sex offender" either notice or an opportunity to be heard prior to the publication of his or her status as a convicted sex offender, did. HRS §§ 846E–2 and 846E–3 were subsequently amended in respects not relevant to the present matter. *See* 2002 Haw. Sess. L. Act 234, §§ 1 and 2 at 929–32.

lying factual basis of the charge against Chun.

The DPD objected to the sex offender registration requirement, arguing that indecent exposure towards a minor did not qualify as a registrable sex offense for purposes of HRS ch. 846E. In addition, she argued that there was no showing that Chun posed any risk to the community and, accordingly, that the statute was "overbroad and unconstitutional because it ... impose[d] a lifetime requirement. And we would also submit that it would infringe on his right to privacy." The district court "sympathized" but believed that "the statute is clear that in the event of this offense, given the fact that it was to a minor, the Court has no alternative but to inform the defendant that he ... must register."

Chun filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

■■■ We review the [district] court's interpretation of a statute *de novo*. *State v. Pacheco*, 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). Our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

> ... This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993).

*Id.* at 94–95, 26 P.3d at 583–84 (some citations and internal quotation marks added and some in original) (brackets in original).

*Coon v. City and County of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (some brackets added and some in original) (ellipsis points in original).

### B. Constitutional Law

■■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case.... Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations and some internal quotation signals omitted).

## III. DISCUSSION

HRS ch. 846E imposes certain registration and public notification requirements on "sex offenders." HRS § 846E–1 (Supp.1998) defines a "sex offender," *inter alia*, to mean "[a]ny person convicted of ... a 'criminal offense against a victim who is a minor[.]'" A "criminal offense against a victim who is a minor" means

any criminal offense that consists of:

(1) Kidnapping of a minor, except by a parent;

(2) Unlawful imprisonment in the first degree of a minor, except by a parent;

(3) *Criminal sexual conduct toward a minor*;

(4) Solicitation of a minor who is less than fourteen years old to engage in sexual conduct;

(5) Use of a minor in a sexual performance;

(6) Solicitation of a minor to practice prostitution;

(7) Any conduct that by its nature is a sexual offense against a minor, but excludes conduct that is criminal

only because of the age of the victim, as provided in section 707–730(1)(b) or section 707–732(1)(b), if the perpetrator is eighteen years of age or younger;

(8) An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraphs (1) through (7); or

(9) Any state, federal, or military law similar to paragraphs (1) through (8).

*Id.* (emphasis added).

■ In light of the foregoing statutory definitions, Chun argues that the question presented on appeal is "whether . . . indecent exposure qualifies as 'criminal sexual conduct' under HRS § 846E–1." The prosecution agrees.

Chun contends that

HRS § 846E–1 is ambiguous in that the term "criminal sexual conduct" can be interpreted as applying to only the various degrees of sexual assault, or it can be interpreted as applying to both sexual assault and indecent exposure. Therefore, the term carries "doubleness of meaning," and statutory construction is warranted,

including the examination of extrinsic sources such as legislative history.

We concur. It is not immediately apparent that the intentional exposure of a person's genitals to a person to whom the actor is not married, notwithstanding "circumstances in which the actor's conduct is likely to cause affront," constitutes "sexual conduct." [4] Thus, an examination of the legislative history underlying HRS § 707–734 and HRS ch. 846E is warranted.

Prior to 1972, indecent exposure was defined as an "example" of the offense of common nuisance, in violation of HRS § 727–1 (1968).[5] *See, e.g., State v. Rocker,* 52 Haw. 336, 475 P.2d 684 (1970) ("To create a common nuisance there must be an indecent exposure of the person in a public place where it may be seen by others if they pass by, and it need be seen by one person only."). In 1972, the legislature redefined indecent exposure as a separate "sexual" offense, in violation of HRS § 707–738 (1972). 1972 Haw. Sess. L. Act 9, § 1 at 91. HRS § 707–738 provided that "[a] person commits the offense of indecent exposure if, *with intent to arouse or gratify sexual desire of himself or of any person,* he exposes his genitals to a

---

4. Indeed, although the legislature did not define "sexual conduct" within the four corners of HRS ch. 846E, it has defined "sexual conduct" elsewhere in the penal code, and indecent exposure, in violation of HRS § 707–734, would not constitute "sexual conduct" under those definitions. HRS § 712–1200 (1993) ("Prostitution"), for example, defines "sexual conduct" to mean "'sexual penetration,' 'deviate sexual intercourse,' or 'sexual contact,' as those terms are defined in section 707–700." In addition, HRS §§ 707–750 (Supp.1998) ("Promoting child abuse in the first degree") and 707–751 (Supp. 1998) ("Promoting child abuse in the second degree") define "sexual conduct" to mean "acts of masturbation, homosexuality, lesbianism, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor." Indecent exposure, in violation of HRS § 707–734, *see supra* note 2, however, involves none of the sexual contact (even if merely auto-erotic) or, necessarily, the lascivious behavior that is integral to the foregoing definitions of "sexual conduct." ("[L]ascivious exhibition of the genitals" includes something more than exposure of the genitals "under circumstances in which the actor's conduct is likely to cause affront," inasmuch as "lascivious" means "tending to incite lust, to deprave the morals in respect to sexual

relations, or to produce voluptuous or lewd emotions in the average person, applying contemporary community standards." HRS §§ 707–750 and 707–751.) While these definitions are not applicable to HRS ch. 846E, they certainly raise doubt as to whether the legislature sought to include indecent exposure among the offenses that involve "criminal sexual conduct toward a minor" and require registration pursuant to HRS ch. 846E.

5. HRS § 727–1 provided in relevant part:

The offense of common nuisance is the endangering of the public personal safety or health, or doing, causing or promoting, maintaining or continuing what is offensive, or annoying and vexatious, or plainly hurtful to the public; or is a public outrage against common decency or common morality; or tends plainly and directly to the corruption of the morality; or tends plainly and directly to the corruption of the morals, honesty, and good habits of the people; the same being without authority or justification by law:

As for example: . . .

. . . .

Open lewdness or lascivious behavior, or *indecent exposure*[.]

(Emphasis added.)

person to whom he is not married under circumstances in which his conduct is likely to cause affront or alarm." (Emphasis added.) [6] The offense constituted a petty misdemeanor. HRS § 707–738(2). Then, in 1986, the legislature recodified all of the "sexual offenses" into five degrees of sexual assault. *See* 1986 Haw. Sess. L. Act 314, § 57 at 618; *see also State v. Kalama,* 94 Hawai'i 60, 63, 8 P.3d 1224, 1227 (2000); *State v. Cardus,* 86 Hawai'i 426, 435, 949 P.2d 1047, 1056 (App. 1997). "As a result, HRS § 707–738 was retitled 'Sexual assault in the fifth degree,' the phrase 'with intent to arouse or gratify sexual desire of himself [or herself] or of any person' was deleted, the word 'intentionally' was added, and HRS § 707–738 was renumbered as HRS § 707–734." *Kalama,* 94 Hawai'i at 63, 8 P.3d at 1227 (citing 1986 Haw. Sess. L. Act 314, § 57 at 618) (brackets in original).

In 1991, however, the legislature renamed the offense in violation of HRS § 707–734 in order to distinguish it from the sexual assault offenses. *See* 1991 Haw. Sess. L. Act 214, § 2 at 498–99. The legislative history of the amendment suggests that the legislature intended to:

> [c]reat[e] a new dichotomy between behavior that is likely to cause fear of bodily injury or alarm and that which is likely to cause affront. The former, a more serious offense, will constitute fourth-degree sexual assault. The latter has been renamed from sexual assault in the fifth degree to indecent exposure. *The newly titled section is intended to deal with behavior such as nude sunbathing or streaking, that does not cause alarm or fear of bodily harm, in circumstances where it is likely to be an affront to a substantial part of the community.*

Sen. Stand. Comm. Rep. No. 1000, in 1991 Senate Journal, at 1103 (emphasis added) (discussing the Senate Judiciary Committee's amendments to House Bill No. 73, which were incorporated into Act 214); *see also* Commentary on HRS §§ 707–730 to 707–734. Consequently, HRS § 707–733(1) (1993)

("Sexual Assault in the fourth degree"), which is not merely a form of exhibitionism, now prohibits, *inter alia,* a person from "knowingly expos[ing] the person's genitals to another person under circumstances in which the actor's conduct is likely to *alarm the other person or put the other person in fear of bodily injury*[,]" while HRS § 707–734 prohibits the same conduct under circumstances in which "the actor's conduct is [merely] *likely to cause affront.*" (Emphases added.) [7]

Thus, in renaming and redefining HRS § 707–734, the legislature clearly sought to distinguish indecent exposure from the "sexual offenses" codified under HRS ch. 707, part V, and evidenced its belief that indecent exposure was a fundamentally different and less serious offense. As noted above, the behavior that the legislature sought to prohibit by means of the renamed and redefined statutory provision included nude sunbathing and streaking.

The legislature enacted the registration and public notification requirements of HRS ch. 846E in order to protect "the public from sex offenders and ... children from predatory sexual activity[.]" 1997 Haw. Sess. L. Act 316, § 1 at 749. The legislature found that "sex offenders who use physical violence, sex offenders who prey on children, and repeat sex offenders present an *extreme* threat to the public safety." *Id.* (emphasis added). "Indecent exposure" that is likely merely to cause affront—*e.g.,* nude sunbathing and streaking—rather than fear of bodily injury or alarm, can hardly be said to "present an extreme threat to the public safety" and, consequently, does not appear to be the kind of offense that the legislature had in mind in drafting Act 316. Indeed, requiring nude sunbathers and streakers to register as sex offenders would be patently absurd. *Cf. In re Lynch,* 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 934 (1972) ("Clinical studies 'support and confirm the traditional legal provisions which have treated [indecent exposure] as a social nuisance,' [*i.e.,*] as disorderly conduct rather than an offense causing per-

---

6. Unlike the current definition of indecent exposure contained in HRS § 707–734, *see supra* note 2, the abovementioned definition probably would constitute "sexual conduct" under the definitions described *supra* in note 4.

7. Of course, HRS § 707–734 does not prohibit such conduct when directed at a person to whom the actor is married, while HRS § 707–733(1)(b) protects spouses as well.

sonal injury . . .' This is so because the commission of the offense invariably entails no physical aggression or even contact. . . ."); *In re King*, 157 Cal.App.3d 554, 204 Cal. Rptr. 39, 41 (1984) (holding that sex offender registration for the offense of indecent exposure constitutes cruel and unusual punishment).

Moreover, in promulgating HRS ch. 846E, the legislature expressly declared that one of its purposes was to comply with the registration requirements for certain sex offenders established by the Jacob Wetterling Crimes against Children and Sexually Violent Offender Registration Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796, 2038 [hereinafter, the "Wetterling Act"], as amended by Megan's Law, Pub.L. No. 104–145 (1996), and the Pam Lynchner Sexual Offender Tracking and Identification Act of 1996, Pub.L. No. 104–236 (codified as amended at 42 U.S.C. § 14071 (2000)),[8] in order "to ensure that the federal funds desperately needed by law enforcement agencies are not lost." 1997 Haw. Sess. L. Act 316, § 1 at 749. *See also* Sen. Conf. Comm. Rep. No. 151, in 1997 Senate Journal, at 911 ("The purpose of this bill is to protect Hawai'i's children and adults from sex offenders by revising requirements for the registration of sex offenders pursuant to the [Wetterling Act.]"); Sen. Stand. Comm. Rep. 1125, in 1997 Senate Journal, at 1318 ("[F]ailure to comply with recent federal requirements for sex offender registration and notification will result in a ten percent reduction in the State's Byrne Formula Grant funding. Your [Senate Judiciary] Committee is painfully aware of the State's worsening economic condition and the need to take immediate action to ensure that the federal funds desperately needed by law enforce-

ment agencies are not lost."); Sen. Stand. Comm. Rep. 1514, in 1997 Senate Journal, at 1465 ("this bill . . . is necessary to ensure that federal funds for law enforcement agencies are not lost"); Hse. Conf. Comm. Rep. No. 151, in 1997 House Journal, at 1100 ("The purpose of this bill is to protect Hawai'i's children and adults from sex offenders by revising requirements for the registration of sex offenders pursuant to the [Wetterling Act.]"); Hse. Stand. Comm. Rep. No. 731, in 1997 House Journal, at 1394–95 ("The purpose of this bill is to protect Hawai'i's children from sex offenders by . . . [r]evising the requirements for the registration of sex offenders pursuant to the [Wetterling Act.]"). Indeed, Representative David A. Pendleton described the house bill that became Act 316 as "basically [Hawai'i's] version of the [Wetterling Act.]" 1997 House Journal at 404.

The Wetterling Act directs the United States Attorney General to "establish guidelines for state programs that require . . . a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense to register a current address with a designated State law enforcement agency[.]" 42 U.S.C. § 14071(a)(1)(A). The guidelines note that the Wetterling Act's registration requirements "constitute a floor for state programs, not a ceiling." Final Guidelines for the Wetterling Act, 61 Fed.Reg. 15110, 15112 (1996).[9] States that fail to comply with the program described in the Wetterling Act face the loss of certain federal funds that they would otherwise receive. 42 U.S.C. § 14071(g)(2)(A).

The statutory definition of "criminal offense against a victim who is a minor" that is contained in HRS § 846E–1 is taken nearly verbatim from the Wetterling Act.[10] The At-

---

8. 42 U.S.C. § 14071 has been amended in various respects not relevant to the present matter since it was considered by the Hawai'i Legislature in 1997. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, Pub.L. No. 105–119, Title I, § 115(a)(1) to (5), 111 Stat. 2461 to 2463 (1997); Protection of Children from Sexual Predators Act of 1998, Pub.L. No. 105–314, Title VI, § 607(a), 112 Stat. 2985; Victims of Trafficking and Violence Protection Act of 2000, Pub.L. No. 106–386, Div. B, Title VI, § 1601(b)(1), 114 Stat. 1537; Prosecutorial Remedies and Tools against the Exploitation of Children Today Act of 2003, Pub.L. No. 108–21, Title VI, §§ 604(a), 605(a), 606, 117 Stat. 688.

9. The Final Guidelines have subsequently been amended several times in respects not relevant to the present matter.

10. 42 U.S.C. § 14071(a)(3)(A) provides in relevant part:

The term "criminal offense against a victim who is a minor" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses:

(i) kidnapping of a minor, except by a parent;

(ii) false imprisonment of a minor, except by a parent;

torney General's Final Guidelines for implementing the Wetterling Act provide that

> [s]tates can comply with [the] clause [regarding "criminal sexual conduct toward a minor"] by requiring registration for persons convicted of all statutory sex offenses under state law whose elements involve *physical contact with a victim,* where the victim was below the age of 18 at the time of the offense. *Offenses that do not involve physical contact, such as exhibitionism, are not subject to the Act's mandatory registration requirements pursuant to clause (iii), but states are free to require registration for persons convicted of such offenses as well if they so choose.*

61 Fed.Reg. at 15113 (emphases added). Thus, it is clear that the Wetterling Act does not require that persons convicted of exhibitionist offenses, such as indecent exposure, register as "sex offenders." Inasmuch as (1) the Hawai'i legislature (a) adopted the Wetterling Act's definition of "criminal offense against a victim who is a minor" and (b) expressly articulated its intent to comply with the federal statute in order to avoid the loss of federal funds and (2) the legislative history underlying HRS ch. 846E is devoid of any suggestion that the legislature sought to exercise its discretion to require registration for "[o]ffenses that do not involve physical contact, such as exhibitionism," we conclude that the legislature did not intend to include indecent exposure, in violation of HRS § 707–734, among the offenses requiring registration pursuant to HRS ch. 846E.

The prosecution contends that it is clear that Chun "was convicted of a criminal offense which consisted of '[c]riminal sexual conduct against a minor' " because, "[a]t the

> (iii) criminal sexual conduct toward a minor;
> (iv) solicitation of a minor to engage in sexual conduct;
> (v) use of a minor in a sexual performance;
> (vi) solicitation of a minor to practice prostitution;
> (vii) any conduct that by its nature is a sexual offense against a minor;
> (viii) production or distribution of child pornography . . . ; or
> (ix) an attempt to commit an offense described in any clauses (i) through (vii), if the State—
> (I) makes such an attempt a criminal offense; and

sentencing hearing, it was evident that the basis for the offense was that [Chun] 'violated [the complainant] while hugging her. . . . [Chun], an adult, was thus convicted of intentionally exposing his genitals to a fifteen-year-old girl while hugging her." Thus, the prosecution appears to be suggesting that the question presented is not whether the material elements of indecent exposure, in violation of HRS § 707–734, constitute an offense entailing "sexual conduct" and thereby requiring registration pursuant to HRS ch. 846E but, rather, whether the specific conduct supporting the charge against Chun triggers registration, even if the elements of the charged offense do not entail "sexual conduct." The prosecution's suggestion is flawed for at least two reasons.

First, the prosecution implies that Judge Hayashi expressly found and concluded that Chun's conduct in the present matter constituted "sexual conduct," irrespective of the actual elements of the charged offense, and that such "sexual conduct" warranted registration pursuant to HRS ch. 846E. On the contrary, however, Judge Hayashi's comments noted *supra* in section I merely reflected her belief that she was required to inform Chun that he must register pursuant to HRS ch. 846E based *solely* on the offense to which he pled no contest and not on the particular circumstances giving rise to the charge. Indeed, Judge Hayashi never entered *any* findings of fact regarding the circumstances of the charged offense, and the record is opaque with respect to them, notwithstanding the prosecution's unsupported characterization.[11]

> (II) chooses to include such an offense in those which are criminal offenses against a victim who is a minor for the purposes of this section.

11.  As noted *supra* in section I, the specific events giving rise to the charged offense are not at all evident from the record, and the portions of the transcript of the sentencing hearing that the prosecution cites in support of its characterization of what transpired do not clearly establish that Chun "violated" the complainant (whatever that might mean) or that he exposed his genitals "while hugging her," as the prosecution suggests.

■ Second, as noted *supra*, HRS ch. 846E and the Wetterling Act upon which it is modeled, expressly describe "offenses" that give rise to the registration and public notification requirements. "As the term is commonly understood, an offense is 'a breach of the criminal laws,' *i.e.*, a 'violation of law for which [a] penalty is prescribed.' *Black's Law Dictionary* 1081 (6th ed.1990)." *State v. Dudoit*, 90 Hawai'i 262, 269, 978 P.2d 700, 707 (1999). Accordingly, this court has held that "the term 'offense,' as employed by the [Hawai'i Penal Code (]HPC[) ], refers to the commission of the crime or violation." *Id.* at 270, 978 P.2d at 708 (emphasis omitted). "No behavior constitutes an offense unless it is a crime or violation under [the HPC] or another statute of this State." HRS § 701–102(1) (1993). "[N]o person may be convicted of an offense unless[, *inter alia*,] ... [e]ach element of the offense" and "[t]he state of mind required to establish each element of the offense" are proved beyond a reasonable doubt. HRS § 701–114 (1993). Consequently, an offense comprises "criminal sexual conduct toward a minor" if, and only if, the elements of the offense generically describe "criminal sexual conduct toward a minor." [12] Accordingly, if a person's actions entail criminal sexual conduct toward a minor, the prosecution should charge the person with an offense that includes criminal sexual conduct among its elements if it wishes to implicate the provisions of HRS ch. 846E.

In sum, and to reiterate, we hold that indecent exposure, in violation of HRS § 707–734, *see supra* note 2, does not constitute an offense that entails "criminal sexual conduct" and, consequently, that persons convicted of indecent exposure are not "sex offenders" for purposes of HRS ch. 846E.[13] Accordingly, we further hold that Chun is not required to register as a "sex offender" pursuant to HRS ch. 846E. Because the foregoing holding is dispositive of the present appeal, we decline to address Chun's remaining points of error.

## IV. CONCLUSION

Based on the foregoing, we vacate the district court's sentence and remand the case for resentencing consistent with this opinion.

### Dissenting Opinion by NAKAYAMA, J.

I respectfully dissent from the majority's opinion. I believe that, based on the plain meaning of HRS § 707–734, the legislature clearly intended the offense of "indecent exposure" to constitute "criminal sexual conduct." Thus, if a defendant is convicted of indecent exposure as directed toward a minor, the defendant is subject to the registration requirements of HRS chapter 846E.

This case turns on the interpretation of HRS §§ 707–734 and 846E–1. Statutory interpretation is reviewed *de novo*. *Doe Parents No. 1 v. State Dept. of Educ.*, 100 Hawai'i 34, 57, 58 P.3d 545, 568 (2002).

> In construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Moreover, we must read statutory language in the context of the entire statute and construe it in

---

12. Thus, whether a person must register as a "sex offender," pursuant to HRS ch. 846E, is a question of law. *Cf. State v. Merino*, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (" 'Whether an indictment [or complaint] sets forth all the essential elements of [a charged] offense ... is a question of law,' which we review under the *de novo*, or 'right/wrong,' standard." (Citing *State v. Wells*, 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995).)). Accordingly, it would be helpful if the legislature were to clearly enumerate the statutory offenses that trigger the registration requirement, particularly in light of the fact that HRS ch. 846E places the duty to register on the "sex offender" himself or herself, *see supra* note 2, and imposes criminal penalties on the sex offender for failure to comply with any of the provisions of the chapter, *see* HRS § 846E–9.

13. We note that the elements of indecent exposure likewise do not entail "conduct that by its nature is a sexual offense against a minor." HRS § 846E–1. The foregoing provision is taken verbatim from the Wetterling Act, *see supra* note 10, and the Attorney General's Final Guidelines explain that the provision is "intended to [e]nsure coverage of convictions under statutes defining sex offenses in which the status of the victim as a minor is an element of an offense, such as specially defined child molestation offenses, and other offenses prohibiting sexual activity with underage persons." 61 Fed.Reg. at 15113.

a manner consistent with the statute's purpose. We may also consider the spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning. Similarly, laws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other, and, thus, what is clear in one statute may be called upon in aid to explain what is doubtful in another.

*Id.* (citations, bracket, and quotation marks omitted). "It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." *State v. Richie*, 88 Hawai'i 19, 30, 960 P.2d 1227, 1238 (1998). Because the terms of HRS §§ 707–734 and 846E are plain and unambiguous, we must "give effect to its plain and obvious meaning." *Id.*

HRS § 846E–2 provides that "[a] sex offender shall register with the attorney general and comply with the provisions of this chapter for life." HRS § 846E–1 defines sex offender as "[a]ny person convicted of a 'sexually violent offense' or a 'criminal offense against a victim who is a minor[.]'" While indecent exposure is not a sexually violent crime, it is, under certain circumstances, a criminal offense against a victim who is a minor. HRS § 846E–1 defines "criminal offense against a victim who is a minor" as, *inter alia*, "any criminal offense that consists of ... [c]riminal sexual conduct toward a minor." Thus, the question that must be answered is whether indecent exposure is "criminal sexual conduct." I would answer in the affirmative.

HRS chapter 846E fails to define "criminal sexual conduct." Nonetheless, reading HRS § 707–734 *in pari materia* with HRS chapter 846E, the legislature clearly intended indecent exposure to constitute criminal sexual conduct. The legislature set forth indecent exposure in chapter 707 part V, entitled "sexual offenses."[1] Because it is a "sexual offense," indecent exposure obviously requires sexual conduct. The sexual conduct of inde-

cent exposure is exposing one's genitals. Moreover, violation of HRS § 707–734, indecent exposure, is a criminal offense. It follows, therefore, that indecent exposure is criminal sexual conduct.

However, not all criminal sexual conduct requires registration pursuant to HRS chapter 846E, only "criminal sexual conduct toward a minor." Accordingly, nude sunbathers and streakers would not be required to register pursuant to HRS chapter 846E if convicted of indecent exposure for sunbathing or streaking in an area where minors happen to be present. A defendant must be convicted of indecent exposure, in violation of HRS § 707–734, and found to have directed that criminal sexual conduct toward a minor, pursuant to HRS § 846E–1, before he or she would be subject to the registration requirements of HRS chapter 846E.

In the instant case, Chun pled no contest to the charge of indecent exposure, in violation of HRS § 707–734, and it is undisputed that his conduct was directed to the complainant, who was a minor. Thus, because Chun was convicted of indecent exposure and his criminal sexual conduct was directed toward a minor, I would hold that the district court did not err by determining that Chun was required to register, pursuant to HRS chapter 846E.

---

1. If the legislature did not intend those convicted of indecent exposure to be "sex offenders" under circumstances such as the instant case, it should

remove HRS § 707–734, indecent exposure, from chapter 707 part V, entitled "sexual offenses."