967 A.2d 184

**STATE of Maryland**

v.

**Michael Raheem DURAN.**

**No. 73, Sept. Term, 2008.**

Court of Appeals of Maryland.

March 11, 2009.

Cathleen C. Brockmeyer, Asst. Atty. General (Douglas F. Gansler, Atty. General, Baltimore), of brief, for petitioner.

Celia Anderson Davis, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for Respondent.

Argued Before: BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), ALAN M. WILNER (Retired, Specially Assigned), JJ.

BATTAGLIA, Judge.

After exposing his penis to various girls of middle school age on three separate occasions in Prince Georges County, Michael Raheem Duran was indicted on four counts of indecent exposure.[1] Subsequently, Duran pled guilty, under an agreed statement of facts, to one count of indecent exposure in each of the three cases. The plea agreement provided that Duran would be sentenced to time-served as well as five years supervised probation, with the requirement that he be evaluated by Parole and Probation as part of a Pre–Sentence Investigation to determine if he were a sexual predator and that he follow any treatment recommendations.[2] At sentencing, the State also asked that Duran register as a sexual offender, a request to which Duran took objection. After the Circuit Court Judge ordered Duran to register as a sexual offender, Duran appealed to the Court of Special Appeals, which, in a reported opinion, vacated the condition of probation requiring registration, because the elements of the crime of indecent exposure "do not contain reference to a sexual offense against a minor," and because registration was outside the scope of the plea agreement. *Duran v. State*, 180 Md.App. 65, 85–86, 948 A.2d 139, 151 (2008). We granted certiorari, *State v. Duran*, 405 Md. 506, 954 A.2d 467 (2008), to answer the following question:

Where Respondent entered a guilty plea to three counts of indecent exposure for exposing himself in front of three middle school girls on three separate occasions, and under the terms of the plea agreement, Respondent agreed to be evaluated to determine if he is a sexual predator, and, if necessary, to receive treatment, did the court properly order Respondent to register as a sexual offender when, as

1. Two of the four counts charged were related to one incident involving two victims, and a *nolle prosequi* was entered on the second count.

2. Duran was sentenced to the Division of Correction for three years for each count, the sentences to run concurrently, with all but 224 days, or time-served, suspended.

a result of the evaluation, it was recommended that he register?

## I. Introduction

Michael Raheem Duran appeared before the Circuit Court for Prince Georges County on March 9, 2007, to enter a guilty plea to each of three counts of indecent exposure under Section 11–107 of the Criminal Law Article, Maryland Code (2002, 2006 Supp.): [3]

[ASSISTANT STATE'S ATTORNEY]: Your Honor, the agreement is that he will plead guilty to Count 1 of each case. There are three cases. That each side is free to allocute for the suspended portion of the sentence, the maximum is three years on each case, and that he will be given credit. All of that will be suspended except for the time that he's served. He's been in jail since September 15th. And that as part of the plea agreement, through Parole and Probation, he will be evaluated as a sexual predator and he will follow all treatment recommendations if there are any from that evaluation. No contact with any of the victims. The State is asking for no unsupervised contact with any children under the age of 18 at this juncture.

During a colloquy with Duran, the Judge initiated the following discussion:

THE COURT: Your attorney indicates that you want to enter pleas of guilty to Count 1 in each of these three indictments; is that correct?

[DURAN]: Yes.

THE COURT: Have you discussed the matter with your attorney?

[DURAN]: Yes.

---

**3.** Section 11–107 of the Criminal Law Article, Maryland Code (2002, 2006 Supp.) states:

A person convicted of indecent exposure is guilty of a misdemeanor and is subject to imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both.

THE COURT: Are you satisfied with his services up until the present time?

[DURAN]: Yes.

THE COURT: Do you understand the nature of the offenses to which you're pleading guilty?

[DURAN]: Yes.

THE COURT: Indecent exposure means exactly that. That you exposed your penis in this case—in each case to three different persons. Do you understand that?

[DURAN]: Yes.

THE COURT: Do you understand that once I accept your plea of guilty, the only thing left to be done is to sentence you and I've agreed to sentence you according to the agreement your attorney reached with the State's Attorney and sentence you to no more than a guideline sentence as to the executed part of the sentence? Both sides are free to allocute as to the amount of the suspended sentence and the period of probation.

We're going to order a Presentence Investigation which will include an evaluation as to whether or not you are a sexual predator by Parole and Probation. The conditions of your probation will be that you're required to follow their recommendation as to treatment. That you are to have no contact with any of the individuals named in these indictments, and that you're to have no unsupervised contact with any child under the age of 18.

Is that your understanding of the plea agreement?

[DURAN]: Yes.

Thereafter, during the course of the proceeding, the Assistant State's Attorney recited the following agreed statement of facts:

[STATE'S ATTORNEY]: Had this matter gone to trial witnesses would have testified to the following: That on September 1st of the year 2006 at approximately 9:05 in the morning somewhere at the intersection of Plata Street and Megan Drive in Clinton, Prince George's County, Maryland,

this Defendant, who would be identified as Michael Raheem Duran, sitting to the left of counsel at counsel table in the red jumpsuit, approached [J.H.] who was on her way to school. He was driving a greenish-colored 1995 Toyota Corolla, and he asked [J.H.] if she knew the location of Surrattsville High School. [J.H.] was on her way to middle school. She was age 12, 13 approximately. When this Defendant called [J.H.] over, she observed the Defendant was not wearing any pants, that he was fondling his penis. [J.H.] then walked away and notified the police of the incident.

During the course of the investigation, similar instances in the area were noted. The victim in this case provided a description of the vehicle and the Maryland registration plate number CBM–821. A computer check of that license plate number revealed that it did belong to this Defendant—I'm sorry—this Defendant's mother. This Defendant was eventually located and was advised of his rights per Miranda. He waived his rights, and he made a confession involving this incident with [J.H.] who was 13 years of age.

Your Honor, this victim was shown a six-person photo identification and identified this Defendant in the photo spread as the one who had called her over and exposed his penis to her. All of those events occurred in Prince George's County.

Witnesses would have testified that on September 4th of the year 2006 that victim, [C.W.], was also walking to middle school when this Defendant approached her, also in Prince George's County. He approached her at about ten minutes to nine in the morning. And he pulled his vehicle alongside of where this victim was walking and asked if she knew where Surrattsville High School was.

The victim said that she looked over and observed this Defendant. He didn't have any pants on, and he was exposing himself to her. This victim fled, and this Defendant also fled in the listed vehicle. She indicated that she had seen this Defendant prior to this exposing himself to

kids as they were walking to school. The police responded and checked the area with negative results at that time. This victim was shown a six-person photo spread on September 21 st of the year 2006 and identified this Defendant as the person who had exposed himself to her while she was walking to middle school on September 4th of the year 2006. In CT 06–2375X, September 14th of the year 2006, the 6000 block of Hil Mar Drive in Forestville, Prince George's County, Maryland, this Defendant, who again would be identified as Michael Raheem Duran, approached [S.R.]. She was on her way to school, to middle school. He exposed himself by touching his penis. His pants were down to his ankles as he was sitting in his vehicle.

Again, all of the victims described a similar vehicle, Toyota Corolla. This Defendant again used the same way to get the children to the car and that was he was asking for directions to a certain school.

On September 15th, the day after this, the Defendant was arrested. He waived his rights per Miranda. He gave a ten-page written statement, and in that statement he did admit to exposing himself to these children. He also admitted that he was a security guard at the Smithsonian Institute or he had just resigned that job days before and that he was in the process of applying for and becoming a Montgomery County police officer. All events occurred in Prince George's County. That would be the proffer.

After having determined that there was a factual basis for the charges and that the pleas were made "freely, voluntarily, and intelligently," the Circuit Court Judge accepted the guilty plea and ordered a Presentence Investigation. A Presentence Report was filed on April 27, 2007,[4] the same day as Duran's

---

4. Section 6–112 of the Correctional Services Article, Maryland Code (1999, 2006 Supp.), governs presentence investigation reports and states, in pertinent part:

 (a) *In general.*—(1) On request of a court, a parole and probation agent of the Division shall:

 (i) provide the court with a presentence investigation report;

sentencing hearing, during which the following dialogue ensued:

THE COURT: All right. Was there a plea agreement in this case?

[ASSISTANT STATE'S ATTORNEY]: Your Honor, the plea agreement was actually a just free to allocute, and I think the only agreement was some of the terms of probation, but it was a free to allocute.

[COUNSEL FOR DURAN]: I believe it was free to allocute within Guidelines.

[ASSISTANT STATE'S ATTORNEY]: Right. Within Guidelines.

THE COURT: The Guidelines are probation to probation.

[ASSISTANT STATE'S ATTORNEY]: Right.

[COUNSEL FOR DURAN]: Yes.

THE COURT: So, what is the State recommending?

[ASSISTANT STATE'S ATTORNEY]: Your Honor, the only thing, really, the State is looking for in this case, we recognize the Defendant has spent quite a few months in jail, and what the State is looking for now is three years suspended on each case, because I believe it carries three

(ii) conduct other investigations; and

(iii) perform other probationary services.

(2) Except on court order, a presentence investigation report is confidential and is not available for public inspection.

(3) On request, a presentence investigation report shall be made available to:

(i) the defendant;

(ii) the defendant's attorney;

(iii) the State's Attorney;

(iv) a correctional facility;

(v) a parole, probation, or pretrial release official of this State, any other state, or the United States;

(vi) a public or private mental health facility located in this State or any other state if the individual who is the subject of the report has been committed, or is being evaluated for commitment, to the facility for treatment as a condition of probation; or

(vii) a community substance abuse treatment provider located in this State or any other state if the individual who is the subject of the report will be treated or evaluated for treatment by the provider as a condition of probation.

years, but we are very much in agreement with the recommendations found on the Presentence Investigation, Page 3. We would like, as part of his sentence, five years of supervised probation. They are also asking for a lengthy period of supervised probation. No unsupervised contact with any female under the age of 18. **The [S]tate is asking for— and this was already agreed upon—evaluation and treatment as a sexual predator. That was part of the conditions agreed upon.**

**The State is also asking that this Defendant register as a sex offender. That is a strong recommendation from this Presentence Investigation, and it's not very often seen in cases where it is not a mandatory registration.** Also, the Presentence Investigation, and the State is joining in the request, for mandatory psychiatric evaluation and treatment as directed by the probation agent. Supervision fees, I will leave that up to the Court. That is what the PSI, the Presentence Investigation, is requesting.

Your Honor, the reason why the State is asking the Court to follow the recommendation of the Presentence Investigation in this matter in terms very specifically of the sexual registration, the Court will recall that this was not just one isolated case, but it was three cases that had very disturbing similarities. And I will say, just for the purposes of sentencing, and it was given in the discovery, there were other children involved, but that their parents didn't come forward. So, they were not charged as part of this.

But, Your Honor, these actions are disturbing in the type that, in this particular field, indicate issues. And the State feels that this Defendant should be watched, and there should be some accountability for safety of children in the community. Thank you.

(Emphasis added).

Counsel for Duran objected to the State's recommendation that Duran register as a sex offender, arguing that the Judge did not have the authority under the sex offender registration statute, Section 11–704 of the Criminal Procedure Article,

Maryland Code (2001, 2006 Supp.),[5] to require such registration:

**5.** Section 11–704 of the Criminal Procedure Article, Maryland Code (2001, 2006 Supp.), provides:

(a) *In general.*—A person shall register with the person's supervising authority if the person is:

(1) a child sexual offender;

(2) an offender;

(3) a sexually violent offender;

(4) a sexually violent predator;

(5) a child sexual offender who, before moving into this State, was required to register in another state or by a federal, military, or Native American tribal court for a crime that occurred before October 1, 1995;

(6) an offender, sexually violent offender, or sexually violent predator who, before moving into this State, was required to register in another state or by a federal, military, or Native American tribal court for a crime that occurred before July 1, 1997; or

(7) a child sexual offender, offender, sexually violent offender, or sexually violent predator who is required to register in another state, who is not a resident of this State, and who enters this State:

(i) to carry on employment;

(ii) to attend a public or private educational institution, including a secondary school, trade or professional institution, or institution of higher education, as a full-time or part-time student; or

(iii) as a transient.

Statutory references throughout are to the Criminal Procedure Article, Maryland Code (2001, 2006 Supp.), unless otherwise noted.

Section 11–701(d) defines an "offender" as:

(d) *Offender.*—"Offender" means a person who is ordered by a court to register under this subtitle and who:

(1) has been convicted of violating § 3–503 of the Criminal Law Article;

(2) has been convicted of violating § 3–502 of the Criminal Law Article or the fourth degree sexual offense statute under § 3–308 of the Criminal Law Article, if the victim is under the age of 18 years;

(3) has been convicted of the common law crime of false imprisonment, if the victim is under the age of 18 years and the person is not the victim's parent;

(4) has been convicted of a crime that involves soliciting a person under the age of 18 years to engage in sexual conduct;

(5) has been convicted of violating the child pornography statute under § 11–207 of the Criminal Law Article;

(6) has been convicted of violating any of the prostitution and related crimes statutes under Title 11, Subtitle 3 of the Criminal Law Article if the intended prostitute or victim is under the age of 18 years;

(7) has been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years;

[COUNSEL FOR DURAN]: I believe as far as recommendations on Page 3, 1, 2, 4 and 5, we don't have any issues with, and were part of the agreement. As to the sex offender registry, we do object. And I don't believe that there is any authority under the sex offender registration statute to order Mr. Duran to register.

The conditions in that, and I believe it's Criminal Procedure Article 11–701, I think, 704, and they list the definitions of people who have to register. And the definitions are based upon specific crimes committed, and indecent exposure is not one of the enumerated offenses. However, there is a catchall that was discussed in *Cain v. State*, 386 Maryland 320 [872 A.2d 681 (2005) ]. And in that case, a person was charged with various sex offenses and second degree assault and made to register for second degree assault. And the Court of Appeals held that in the catchall exception, which I believe is 11–701(d)(7), and that's, had been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years, and they held that crime, that by its nature, refers only to the elements of the offense. And indecent exposure, I don't believe—

THE COURT: What do you mean, refers only to the elements?

[COUNSEL FOR DURAN]: Basically, as they held, that second degree assault is just an offensive touching and you can offensively touch anyone—

THE COURT: But you can't look behind the crime? Is that what—

[COUNSEL FOR DURAN]: Yes. Yes. You can't look to the Defendant's actions, you look to the crime itself. I guess, the crime as charged. And, so, they also approve—

(8) has been convicted of an attempt to commit a crime listed in items (1) through (7) of this subsection; or

(9) has been convicted in another state or in a federal, military, or Native American tribal court of a crime that, if committed in this State, would constitute one of the crimes listed in items (1) through (8) of this subsection.

they also cite with approval a case from Hawaii, and I don't—I didn't look up the Hawaii indecent exposure statute. But in the Hawaii case they said indecent exposure is a crime that does not require registration. And that case is—

THE COURT: Well, I don't see how indecent exposure can't be a crime of a sexual nature—

[COUNSEL FOR DURAN]: But it's a crime—

THE COURT:—because it involves exposing his penis.

[COUNSEL FOR DURAN]: That may be true. But to be—it also has to be a crime that, by its nature, involves someone under the age of 18. And indecent exposure does not involve, by its nature, exposing yourself to someone under the age of 18.

[ASSISTANT STATE'S ATTORNEY]: I disagree with the second part, that it has to—the crime involves a crime of a sexual nature, and exposing yourself is a type of paraphilia, which is a sexual—

THE COURT: I mean, I think that case stands for the proposition that if somebody negotiates a plea, or if a jury convicts someone of second degree assault, which, by its nature, is not sexual, that's something different. But indecent exposure, I have no problem finding that is an offense that is sexual in nature. And while it does not require necessarily that the audience be under 18 years of age, in this case, that was, in fact, the case, that we're dealing with children.

So, by its nature in this case, I think it fits. And I don't think there is—well, I don't think there's any distinction made statutorily between an adult or a child, which would mean that you could expose yourself to millions of school children and not have to register, which makes absolutely no sense. But nice argument, counsel. Anything else you want to say?

[COUNSEL FOR DURAN]: I would just like to add that the case from Hawaii that I was referring to earlier, State

versus Chun, 102 Hawai'i 383, [76 P.3d 935 (2003),] and that was, I believe, the same factual situation as this case.

THE COURT: How much credit does he get?

[COUNSEL FOR DURAN]: He gets credit from September 15, 2006. I guess the only other argument I would make is that I believe that all the terms of the agreement were put on the record, and sex offender registration was not one of the things that Mr. Duran agreed to.

[ASSISTANT STATE'S ATTORNEY]: It was free to allocute, Your Honor.

The Circuit Court Judge, thereafter, sentenced Duran and required that he register on the Maryland Sex Offender Registry:

THE COURT: All right. I believe he pled guilty to Count 1 in each one of these cases, so as to Count 1 in each one of the cases, I am going to sentence him to three years. That sentence will begin on September 15, 2006, giving him credit for 224 days. I'm going to suspend—and all those sentences will run concurrently. I'm going to suspend the unserved balance of that sentence.

You will be placed on five years active supervised probation with the following special conditions. First, that you have absolutely no unsupervised contact with any female under the age of 18. Two, that he receive sex offender treatment as directed by Parole and Probation, and follow all their directions in that regard. That he have a mandatory psychiatric evaluation and treatment as directed; and, lastly, that he does, in fact register at the Maryland Sex Offender Registry. I think, as I indicated earlier, it is appropriate given the nature of the offense and the intended audience.

Duran filed a Motion for Reconsideration of Sentence, which was denied. On appeal, the Court of Special Appeals, in a reported opinion, concluded that Duran was not required to register as a sexual offender, because "indecent exposure is not one of the enumerated crimes requiring registration" and because the elements of the crime of indecent exposure "do not contain reference to a sexual offense against a minor, and

do not contemplate conduct that by its nature involves a sexual offense," and vacated that condition of probation requiring registration as a sex offender. *Duran v. State,* 180 Md.App. 65, 85–86, 92, 948 A.2d 139, 150–51, 154 (2008). We shall affirm.

## II. Discussion

The State argues that, because Duran agreed that he would be evaluated to determine whether he was a sexual predator, "Duran's guilty plea contemplated a possible registration order." The State also proffers that, although indecent exposure is not one of the enumerated crimes for which registry on the Maryland Sexual Offender Registry is mandated, it is a crime which is sexual in nature, thus, requiring registration under Section 11–701(d)(7). In the alternative, the State argues that even were registration not required, the remedy would be to vacate the entire plea of guilty and remand, rather than merely strike the registration requirement as the Court of Special Appeals did.

Duran, conversely, asserts that his plea agreement did not expressly include registration as a sex offender and that registration is not treatment, so that registration as a sexual offender as a condition of probation exceeded the terms of the plea. Duran also proffers that a defendant convicted of indecent exposure is not required to register, because the crime of indecent exposure is not "a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years" under Section 11–701(d)(7). Duran asserts that the Court of Special Appeals correctly determined that the proper remedy for the registry misdirection is to strike the registry condition, rather than vacate the guilty plea.

Registration for an "offender" and "sexually violent offender" entails registering "in person every 6 months with a local law enforcement unit" for 10 years or life, depending on the offense. Section 11–707. The Department of Public Safety and Correctional Services maintains a central registry, which contains a signed statement of each registrant as well as the

person's photograph and fingerprints.[6] Sections 11–708 and 11–716. Registrants also must submit change of address information and registration statements are made available to the public and may be posted on the Internet. Sections 11–705 and 11–717.[7]

---

6. In the case of those required to register as a result of a felony, a DNA sample also is obtained at the time of registration. Section 11–708.

7. The history of the registration requirements was explicated in *Graves v. State*, 364 Md. 329, 336–37 & n. 8, 772 A.2d 1225, 1229–30 & n. 8 (2001) (footnote in original):

> The Maryland Legislature enacted Article 27, § 792 entitled "Registration of Offenders" pursuant to the requirements of the Jacob Wetterling Crimes Against Children and Sexually Violent· Offender Registration Program enacted by the United States Congress as part of the Violent Crime Control and Law Enforcement Act of 1994. Pub.L. No. 103–322, 108 Stat. 1796 (1994), codified at 42 U.S.C. § 14071 (1995).[footnote]

> [footnote] The Wetterling Act was developed in response to national pressure to address "crimes of violence and molestation committed against children in the United States" following the abduction of eleven-year-old Jacob Wetterling in St. Joseph, Minnesota. H.R.Rep. No. 103–392, at 3 (1993). The Wetterling Act established guidelines for registering sex offenders and providing notification for persons convicted of sexually violent offenses or criminal offenses against minors, or who were determined to be sexually violent predators. *See* 42 U.S.C. § 14071. Each state had until September 13, 1997, to enact legislation implementing a sex offender registration statute in accordance with the guidelines set forth in the Federal Act, or risk losing federal funding apportioned to the states for crime fighting programs. *See* 42 U.S.C. § 14071(g); H.R.Rep. No. 104–555, at 2 (1996). As originally enacted in 1994, § 14071 left states with the discretion as to whether disclosure of registrant information to the public was warranted. *See generally,* Caroline Louise Lewis, *The Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act,* 31 Harv. C.R.—C.L. L.Rev. 89 (1996).

> On July 29, 1994, thirty-two year old Jesse Timmendequas, a convicted child sex offender, sexually assaulted and murdered his seven year-old neighbor, Megan Kanka. *See State v. Timmendequas,* 161 N.J. 515, 737 A.2d 55 (N.J.1999). The public outrage associated with the murder of Megan Kanka prompted the states and the federal government to re-examine the structure of their respective sex offender registration statutes. Congress responded by amending the Wetterling Act in May 1996, renaming it Megan's Law, to require the states to add language to their statutes mandating the release of relevant sex offender registrant information necessary to protect the public. *See* H.R. 2137, 104th Cong.

Section 11–704 mandates registration whereby certain "offenders" must register with their supervising authority: [8]

(a) *In general.*—A person shall register with the person's supervising authority if the person is:

(1) a child sexual offender;

(2) **an offender;**

(3) a sexually violent offender;

(4) a sexually violent predator;

(5) a child sexual offender who, before moving into this State, was required to register in another state or by a federal, military, or Native American tribal court for a crime that occurred before October 1, 1995;

(6) an offender, sexually violent offender, or sexually violent predator who, before moving into this State, was required to register in another state or by a federal, military, or Native American tribal court for a crime that occurred before July 1, 1997; or

(7) a child sexual offender, offender, sexually violent offender, or sexually violent predator who is required to register in another state, who is not a resident of this State, and who enters this State:

(i) to carry on employment;

(ii) to attend a public or private educational institution, including a secondary school, trade or professional institu-

---

(1996), reprinted in 110 Stat. 1345 (1996). Presently, all fifty states have adopted some form of sex offender registration laws or established community notification programs.

The Maryland statute, which was originally entitled "The Maryland Crimes Against Children and Sexual Offender Registration Law," was enacted as Chapter 142, of the 1995 Laws of Maryland. *See* Gregory G. Gillette, The Maryland Survey: 1994–1995: Recent Development: The Maryland General Assembly: Criminal Law, 55 Md. L.Rev. 847, 852–856 (1996). The 1995 Act provided for sexual offenders, upon release from prison, to notify local law enforcement of his/her presence in the county where he/she intended to live.

**8.** The supervising authority is "the Director of Parole and Probation, if the registrant is under the supervision of the Division of Parole and Probation." § 11–701(i)(12).

tion, or institution of higher education, as a full-time or part-time student; or

(iii) as a transient.

(Emphasis added).

An "offender" is defined under Section 11–701(d), as a person who has committed an enumerated offense or who has "been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years":

(d) *Offender.*—"Offender" means a person who is ordered by a court to register under this subtitle and who:

(1) has been convicted of violating § 3–503 of the Criminal Law Article;

(2) has been convicted of violating § 3–502 of the Criminal Law Article or the fourth degree sexual offense statute under § 3–308 of the Criminal Law Article, if the victim is under the age of 18 years;

(3) has been convicted of the common law crime of false imprisonment, if the victim is under the age of 18 years and the person is not the victim's parent;

(4) has been convicted of a crime that involves soliciting a person under the age of 18 years to engage in sexual conduct;

(5) has been convicted of violating the child pornography statute under § 11–207 of the Criminal Law Article;

(6) has been convicted of violating any of the prostitution and related crimes statutes under Title 11, Subtitle 3 of the Criminal Law Article if the intended prostitute or victim is under the age of 18 years;

(7) **has been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years;**

(8) has been convicted of an attempt to commit a crime listed in items (1) through (7) of this subsection; or

(9) has been convicted in another state or in a federal, military, or Native American tribal court of a crime that, if

committed in this State, would constitute one of the crimes listed in items (1) through (8) of this subsection.

(Emphasis added).

■ Because indecent exposure is not one of the enumerated crimes in Section 11–701(d), we need to explore whether indecent exposure is a crime "that by its nature is a sexual offense" under Section 11–701(d)(7).

In interpreting the same statute, we have heretofore had occasion to address whether a crime "by its nature is a sexual offense" in *Cain v. State,* 386 Md. 320, 872 A.2d 681 (2005). The defendant in *Cain* was charged with one count of child abuse, two counts of third degree sexual assault and one count of second degree assault and pled guilty only to the second degree assault charge. At sentencing, the judge required that Cain register as an "offender" as a condition of his probation, although registration was not part of the negotiated plea. Cain challenged the registration requirement, alleging that "the second degree assault conviction did not fall within the definition of 'offender' under Section 11–701(d)(7)" [9] and that it also was not one of the enumerated offenses mandating registration. *Id.* at 326, 872 A.2d at 686.

After reviewing the statute, we concluded that whether the elements of a crime are sexual in nature is dispositive in the analysis of whether a person is an "offender" requiring registration. We iterated that "[i]n formulating the language of Section 11–701(d)(7), the General Assembly chose the words to define an 'offender' as one 'convicted of a crime that involves conduct that by its nature is a sexual offense' against a minor," and that the "[u]se of this language suggests that the elements of the crime for which one stands convicted is that to which we must look to determine whether registration is appropriate." *Id.* at 336, 872 A.2d at 690. A holding to the

---

**9.** Statutory references to the Criminal Procedure Article in *Cain v. State,* 386 Md. 320, 872 A.2d 681 (2005), are to the Criminal Procedure Article, Maryland Code (2001).

contrary, we noted, "would be to read the word 'crime' out of the definition and rely solely on the offender's conduct." *Id.*[10]

10. In support of our plain meaning analysis we reviewed the statute's legislative history:

The Maryland Offender Registration Act was first introduced as Senate Bill 605 and originally did not contain a specific category of "offenders." *See* 1st Reading, S.B.605 (Jan. 31, 1997). The DPSCS submitted a letter to the Senate stating that Senate Bill 605 "would not bring Maryland into full compliance with the Wetterling Act and subsequent U.S. Department of Justice guidelines ... due, in part, to the bill's deficiency in specifying all of the crimes against minors covered by Wetterling." *See* DPSCS Comments on S.B. 605 (1997) (Feb. 27, 1997).

Included among the offenses in the Wetterling Act that Senate Bill 605 did not contain *was a crime consisting of any conduct that by its nature is a sexual offense against a minor.* 42 U.S.C. § 14071(a)(3)(A)(vii) (2004 Supp.), as amended by Pub.L. 104–145, § 2, 110 Stat. 1345 (1996); Pub.L. 104–236, §§ 3–7, 110 Stat. 3096, 3097 (1996) (emphasis added). On April 4, 1996, the Department of Justice ("DOJ") promulgated guidelines interpreting the definition of criminal offenses that consist of conduct that by its nature is a sexual offense against a minor:

Clause (vii) covers offenses consisting of any conduct that by its nature is a sexual offense against a minor. *This clause is intended to insure uniform coverage of convictions under statutes defining sex offenses in which the status of the victim as a minor is an element of an offense, such as specially defined child molestation offenses, and other offenses prohibiting sexual activity with underage persons.* States can comply with this clause by including convictions under these statutes uniformly in the registration requirement.

*See* DOJ, Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Final Guidelines"), 61 Fed.Reg. 15110 (1996), *amended by* 62 Fed.Reg. 572 (Jan. 5, 1999) (emphasis added). Therefore, the *elements* of the offense were the gravamen of the interpretive guidelines.

In an effort to bring Maryland's registration act in compliance with the Wetterling Act, the House adopted a companion bill, House Bill 343, to broaden the scope of the registration law by changing the term "child sexual offender" to "offender." *See* Floor Report, H.B. 343 (1997). The bill file for House Bill 343 contains copies of both the Wetterling Act and the DOJ's Final Guidelines, indicating the General Assembly's awareness of both in drafting the amendments to Maryland's registration laws. *See* Bill File, H.B. 343 (1997). The Floor Report for House Bill 343 stated, "[t]his bill is designed to bring the State into compliance with that part of the [Wetterling Act] dealing with [child offenders and] sex offender ... [and] expand[s] the types of offenders required to register to include offenders convicted of ... *crime[s] that involve[] conduct that by its nature is a sexual offense against an individual under the age of 18 years."* Floor

We then explored whether the crime of second degree assault was a crime that involves conduct that by its nature is a sexual offense against a minor, and concluded that the crime did not contain a sexual component, so that Cain could not be classified as an "offender":

> The statutory crime of assault in the second degree consists of the common law offenses of assault, assault and battery, and battery, unless aggravated to the greater offense of first degree assault by the use of a firearm or intent to cause serious physical injury. *See Robinson v. State*, 353 Md. 683, 695–96, 728 A.2d 698, 703–04 (1999). These elements alone do not, necessarily and solely, contemplate conduct that by its nature involves a sexual offense.
>
> In order to qualify a person as an offender pursuant to Section 11–701(d)(7), there must be something more than an assault. The statute requires that sexual conduct that involves an underage person also must be presented within the crime charged and which the person stands convicted. To hold otherwise would expose individuals to possible registration that have been convicted of crimes that do not

Report, H.B. 343 (emphasis added). On April 5, 1997, House Bill 343 was adopted and set forth the types of crimes that required an offender to register. *See* H.B. 343. Subsequently, on April 7, 1997, Senate Bill 605 was amended to include the category of "offenders" as provided by the final adopted version of House Bill 343. *See* Amendment to S.B. 605 (1997). Ultimately, the Governor signed Senate Bill 605 with the new amendments and vetoed the House Bill version as redundant, while noting that both accomplished the same purpose of compliance with federal guidelines. *See* Letter from the Honorable Paris N. Glendening, Governor, to the Honorable Casper R. Taylor, Jr., Speaker of the House (May 22, 1997).

\* \* \*

Obviously, the definition of "offender" in the Maryland statute is derived from the corresponding definition in the Wetterling Act. As explained *supra*, the U.S. Attorney General's Final Guidelines explained that the Wetterling Act's provision relating to crimes involving conduct that is inherently a sexual offense was intended to insure uniform coverage of convictions under statutes defining sex offenses and was based upon the elements of the offense. *See* Final Guidelines, 61 Fed.Reg. at 15112.

*Cain*, 386 Md. at 336–38, 872 A.2d at 690–91 (emphasis and alterations in original).

include elements related to sexual conduct with a minor, and would interpret the statute in a manner inconsistent with the General Assembly's intended coverage of qualified "offenders."

*Id.* at 338, 872 A.2d at 691–92 (footnote omitted).

Whether, then, indecent exposure, by its nature contains a sexual component is the issue. In this regard, we already have had occasion to address the origins of the crime of indecent exposure as well as analyze its elements in *Wisneski v. State*, 398 Md. 578, 589, 921 A.2d 273, 279 (2007), wherein we noted that the misdemeanor offense of indecent exposure was "originally derived from English common law when our Declaration of Rights was adopted on November 3, 1776." [11] In *Wisneski*, while addressing whether indecent exposure had to occur in a public place, we clarified that "[t]he authorities ... are in substantial accord that at the common law indecent exposure was the wilful and intentional exposure of the private parts of one's body in a public place in the presence of an assembly," so that "its main elements were the *wilful exposure*, the *public place* in which it was performed, and the *presence of persons* who saw it." *Id.* at 591, 921 A.2d at 280–81 (emphasis in original) (internal quotes omitted). We concluded that "the offense of indecent exposure necessitating open and notorious lewdness, was an offense against morality." *Id.* at 591, 921 A.2d at 280.

It is the word "lewdness" that the State seizes upon to support the notion that indecent exposure is sexual in nature. In doing so, however, the State fails to realize that at common law in England before 1776 "lewdness" was defined as either "frequenting houses of ill fame" or "some grossly scandalous and public indecency." William Blackstone, 4 Commentaries on the Laws of England 65 (1st ed. 1769). As a result, the

---

11. Article 3 of the Maryland Declaration of Rights, on the date of adoption, provided that "the Inhabitants of Maryland are entitled to the Common Law of England ... subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State." This provision currently appears in Article 5 of the Maryland Declaration of Rights.

crime of indecent exposure is not in and of itself sexual in nature, because the lewdness element incorporates conduct that is not sexual, in addition to that which may be sexual.

Our conclusion is bolstered by English common law prior to 1776, which demonstrates that the crime of indecent exposure incorporates conduct that is non-sexual in nature. In the first documented indecent exposure case in England, *Sir Charles Sydlyes Case*, 83 Eng. Rep. 1146, 1146–47 (1663), the defendant was fined, jailed for a week and sentenced to one year of good behavior "for shewing himself naked in a balkony, and throwing down bottles (pist in) vi & armis among the people in Convent Garden, contra pacem, and to the scandal of the Government." If appearing naked in a public place and tossing a bottle of urine could constitute indecent exposure, then, the crime is not by its nature sexual.

Other of our sister courts interpreting English common law also have determined that non-sexual conduct may constitute indecent exposure. In *Van Houten v. State*, 46 N.J.L. 16, 16–17 (1884), for example, the New Jersey Supreme Court affirmed a conviction for indecent exposure when a defendant "exposed himself so that he could be seen from the windows of two dwelling-houses that were then inhabited" and located within a few feet of the place of the occurrence, while urinating outside. *See also Davenport v. United States*, 56 A.2d 851, 852 (D.C.1948) (concluding that "[a]n indecent exposure in a public place likely to be observed by others is a criminal offense regardless of the purpose with which it is made," when a defendant exposed himself while urinating in public in violation of Section 3.25(a) of the National Capital Parks Regulations, which, much like the common law offense in Maryland, defined indecent exposure as "[o]bscene or indecent exposure by any male or female of his or her person ... wherefrom the same may be seen"); *State v. Fly*, 348 N.C. 556, 501 S.E.2d 656, 657–59 (1998) (holding that a man who "was bent over at the waist, with his short pants pulled down to his ankles" thus "mooning" a female witness was guilty of the statutory crime of indecent exposure, which had four elements: "(1) the willful exposure, (2) of private parts of one's

person, (3) in a public place, (4) in the presence of one or more persons of the opposite sex," because "the jury could reasonably find from the evidence that defendant had exposed private parts, either his anus, his genitals, or both").

Of course, statutes criminalizing indecent exposure may include a sexual element. *See, e.g., State v. Isaac,* 756 N.W.2d 817, 819, 821 (Iowa, 2008) (finding insufficient evidence supporting conviction under an Iowa statute that lists as an element of indecent exposure that "[t]he person does so to arouse or satisfy the sexual desires of either party"). In the present case, however, neither this Court's interpretation of the common law indecent exposure nor any statute requires a sexual component.

In considering the exact issue under review in the present case, the Supreme Court of Hawaii, in *State v. Chun,* 102 Hawai'i 383, 76 P.3d 935, 942 (2003), concluded that indecent exposure "does not constitute an offense that entails 'criminal sexual conduct' and, consequently, that a person convicted of indecent exposure is not a 'sex offender,'" that must register as such. *See also State v. Goins,* 151 Wash.2d 728, 92 P.3d 181, 185 (2004) (concluding that "because the legislature did not classify second degree assault with the intent to commit indecent liberties as a sex offense, the legislature did not see fit to require *every* person convicted of that general crime to register as a sex offender upon release") (emphasis in original).

As a result, we conclude that indecent exposure is not a crime that by its nature is a sexual offense. Duran, who was convicted of the crime, is not required to register as a "offender" under Section 11–701(d)(7).

■ The State argues, nonetheless, that even if indecent exposure is not by its nature a sexual offense, Duran had agreed in his negotiated plea to treatment, if recommended, by Parole and Probation, and that registration is a part of treatment. At Duran's plea hearing the Circuit Court Judge explained the conditions of probation, to which Duran agreed, as follows:

We're going to order a Presentence Investigation which will include an evaluation as to whether or not you are a sexual predator by Parole and Probation. *The conditions of your probation will be that you're required to follow their recommendation as to treatment.* That you are to have no contact with any of the individuals named in these indictments, and that you're to have no unsupervised contact with any child under the age of 18.

(Emphasis added). The State's attempt to characterize registration as a sexual offender as "treatment," ignores the purpose for which sex offender registration laws were passed; as previously noted, the General Assembly did not pass these laws in order to provide treatment to sexual offenders, but rather in response to federal legislation requiring notice of an individual's status as a sex offender as a public safety measure. *See Graves v. State*, 364 Md. at 336–37 & n. 8, 772 A.2d at 1229–30 & n. 8. *See also Young v. State*, 370 Md. 686, 716, 806 A.2d 233, 250 (2002) ("[W]e hold that requiring petitioner to register as a sex offender . . . is a remedial requirement for the protection of the public.").

 The State, anticipating the result we reach here, also argues that the appropriate remedy is to vacate Duran's plea, rather than strike the registration condition of probation. We disagree, because the trial court had no authority under the statute to require Duran to register and the registration condition was not integral to the plea agreement; it was not even a subject of negotiation. In *Holmes v. State*, 362 Md. 190, 195–97, 763 A.2d 737, 739–40 (2000), we concluded that, because "the trial court had no authority to impose home detention as a condition of probation," the proper remedy was to vacate the illegal condition of probation, while otherwise affirming the judgment of the circuit court. Rather, vacating a guilty plea is appropriate when a material aspect of the underlying plea agreement is challenged. *See State v. Parker*, 334 Md. 576, 607, 640 A.2d 1104, 1119 (1994) (concluding that when the Court lacked jurisdiction to enforce an integral portion of defendant's plea agreement, the defendant could either leave the guilty plea in place or withdraw the plea, so

that the State could proceed on all of the original charges); *State v. Bittinger,* 314 Md. 96, 102, 549 A.2d 10, 12 (1988) (stating that "[a] defendant successful in challenging the plea must realize, however, that the remedy is ordinarily to place the parties in their original position"); *Sweetwine v. State,* 288 Md. 199, 212 n. 5, 421 A.2d 60, 67 n. 5 (1980) (noting that "where the prosecution breached a plea bargain, entitling the defendant to rescind his guilty plea, if the defendant elected to rescind the guilty plea then he will have to plead anew to *all* of the original charges, including those which the State had nol prossed") (emphasis in original) (internal quotations omitted), *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980). *See also Rojas v. State,* 52 Md.App. 440, 443, 450 A.2d 490, 493 (1982) ("We hold that when a material term of a sentence based upon a plea agreement is unenforceable, the appropriate remedy is to vacate the entire sentence and the corresponding plea agreement."). As a result, the appropriate remedy is to strike the condition of probation that Duran register as a sex offender, which will serve the interest of justice without prejudice to either party.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**