*Edward Dorsey Ellis Rollins, III v. State of Maryland*, No. 10, September Term, 2017. Opinion filed on March 29, 2018, by Berger, J.

## HEADNOTES

CRIMINAL LAW - JURY INSTRUCTIONS - INDECENT EXPOSURE

The elements of indecent exposure are: (1) a public exposure; (2) made willfully and intentionally, as opposed to inadvertently or accidentally; (3) which was observed, or was likely to have been observed, by one or more persons, as opposed to performed in secret, or hidden from the view of others. There is not an additional element of indecent exposure requiring that a viewer be shocked and/or offended by the exposure.

CRIMINAL LAW - JURY INSTRUCTIONS - DEFINITIONS FOR SEPARATE OFFENSES - DISORDERLY CONDUCT - INDECENT EXPOSURE

When a jury was instructed on the separate elements of the offenses of indecent exposure and disorderly conduct, each of which required an element relating to the "public" or to a "public place," the circuit court did not abuse its discretion by declining to propound a clarifying instruction specifically explaining that the statutory definition of "public place" provided for the offense of disorderly conduct should not be applied to the "public" element of indecent exposure.

CRIMINAL LAW - JURY INSTRUCTIONS - DISORDERLY CONDUCT

The circuit court did not abuse its discretion by including in its instruction on disorderly conduct the legislatively enumerated examples of "public places" set forth in Md. Code (2002, 2012 Repl. Vol.), § 10-201 of the Criminal Law Article.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 10

September Term, 2017

_____

EDWARD DORSEY ELLIS ROLLINS, III

v.

STATE OF MARYLAND

_____

Berger,
Beachley,
Thieme, Raymond G., Jr.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Berger, J.
_____

Filed:  March 29, 2018

Following a jury trial, Edward Dorsey Ellis Rollins, III ("Rollins"), appellant, was convicted in the Circuit Court for Worcester County of one count of indecent exposure and one count of disorderly conduct based upon events that occurred on June 22, 2016. Rollins received a sentence of ninety days' incarceration, all of which was suspended. The court ordered that Rollins serve eighteen months of supervised probation.

Rollins raises three issues on appeal, which we have rephrased and consolidated as two issues as follows:

1. Whether the circuit court committed reversible error with respect to its jury instruction on the elements of the crime of indecent exposure.

2. Whether the circuit court committed reversible error with respect to its instruction that, in order to convict Rollins of disorderly conduct, the State was required to prove that Rollins "acted in a public place or public conveyance."

For the reasons explained herein, we shall affirm.

## FACTS AND PROCEEDINGS

Many of the underlying facts relating to Rollins's criminal conviction are unrelated to the limited issues before us in this appeal. We set forth the facts relevant to this appeal, as well as limited additional facts in order to provide the appropriate context for our consideration of the issues.

The events giving rise to this appeal occurred in Ocean City, Maryland on June 21-22, 2016. Karen Lynn, Lisa Smith, Glorilyn Rowe, and Nancy Schrey were visiting Ocean City and staying at the Atlantis condominium complex. During the same time period, Rollins was a guest at the Clarion Hotel, which is adjacent to the Atlantis.

At around 12:00 p.m. on June 21, Lynn and Smith were on the enclosed balcony of their condominium unit. Rowe and Schrey did not arrive until later that evening. From their balcony, Lynn and Smith observed a naked man, later determined to be Rollins, in front of an open sliding glass door in a hotel room at the adjacent Clarion Hotel. The women initially believed that Rollins had mistakenly walked in front of the sliding glass door without realizing that the door was open and that he could be seen from outside. Subsequently, however, Rollins opened the screen door and "looked right over at" the women. The women then observed Rollins "holding" and "stroking" his penis while making eye contact with the women. The women estimated that Rollins continued to masturbate for approximately fifteen minutes.[1] Smith contacted the Clarion Hotel to inform them that there was a gentleman standing naked at his balcony window. The women photographed Rollins, intending to show the photographs to the Clarion manager so that hotel management would "make him stop."

That evening, Rowe and Schrey arrived at the Atlantis condominium. All four women testified as to what they observed the following afternoon, on June 22, 2016. At approximately 2:30 p.m., the women again observed Rollins naked in front of his open sliding glass door. Rollins "looked like [he was] posing," "rubb[ed] his butt," and "ben[t] over." At some point, Rollins sat down on a piece of furniture in front of the open sliding

---

[1] The women did not see Rollins ejaculate, but "assumed he did because he would grab a towel or a pillow."

2

glass door and masturbated. The women could see that Rollins had an erection at this time. Rollins had "his legs really far apart" and was "looking right at" the women.

The women testified that Rollins masturbated in front of the open sliding door on multiple occasions throughout the afternoon. Lynn testified that she observed Rollins masturbating twice that afternoon. Smith testified that she observed Rollins masturbating on "three separate occasions," while Rowe and Schrey each testified that they observed Rollins masturbating four separate times during the afternoon. Rowe testified that Rollins was looking "directly at [her], directly in [her] eyes" while he was masturbating "with a fully erect penis." Lynn and Schrey similarly testified that Rollins looked directly at the women while masturbating.

The women contacted Atlantis security to report Rollins's conduct. Atlantis security representative Michelle Jones arrived at the women's unit to confirm the report. The women pointed out the balcony where they had observed Rollins. Within approximately two minutes after Jones began looking in Rollins's direction, she observed Rollins appear with a towel wrapped around his waist. Within "seconds," Rollins "turned around and dropped the towel," exposing his penis. Jones observed as Rollins sat down on a dark piece of furniture and "started to masturbate." Jones testified that Rollins was positioned in such a manner that she was concerned that Atlantis hotel guests, including children, might be able to see Rollins from the pool area below. Thereafter, Jones contacted the Ocean City Police Department.

Officer Kevin Flower responded to Jones's call and met with the women at their condominium unit. While Flower was there, he observed Rollins walk to the sliding door

of his hotel room and expose his buttocks. The next day, Officer Flower and Sergeant Gregory DiGiovanni continued to investigate. Sergeant DiGiovanni stood in the position in Rollins's hotel room where Rollins had been observed standing the day prior, while Officer Flower stood in the women's condominium unit at the Atlantis. Officer Flower testified that he could easily see Sergeant DiGiovanni standing at his balcony door in the hotel room at the Clarion. Officer Flower and Sergeant DiGiovanni then switched places with identical results.

Rollins was charged with two counts each of disorderly conduct and indecent exposure. One count of each was based upon Rollins's alleged conduct on each of the two days. Following a jury trial, the jury returned a not guilty verdict as to the charges based upon Rollins's conduct on June 21, 2016. The jury found Rollins guilty of disorderly conduct and indecent exposure for his conduct on June 22, 2016.

Additional facts shall be discussed as necessitated by our discussion of the issues on appeal.

**STANDARD OF REVIEW**

We review "a trial court's refusal or giving of a jury instruction under the abuse of discretion standard." *Stabb v. State*, 423 Md. 454, 465 (2011). The Court of Appeals has explained:

> We consider the following factors when deciding whether a trial court abused its discretion in deciding whether to grant or deny a request for a particular jury instruction: (1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given.

4

*Id.* (citing *Gunning v. State*, 347 Md. 332, 351 (1997)). "The burden is on the complaining party to show both prejudice and error." *Tharp v. State*, 129 Md. App. 319, 329 (1999), *aff'd*, 362 Md. 77 (2000).

When determining whether the trial court abused its discretion with respect to a particular jury instruction, we consider the following:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. Where the decision or order [of the trial court] is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

*Bazzle v. State*, 426 Md. 541, 549 (2012) (quotations and citations omitted).

## DISCUSSION

### I.

Rollins raises two arguments relating to the circuit court's indecent exposure instruction. First, Rollins contends that the circuit court failed to instruct the jury as to one of the elements of indecent exposure. Second, Rollins asserts that the circuit court's instruction about the "public" element of indecent exposure constitutes an abuse of discretion because it did not include certain limiting language requested by the defense. As we shall explain, the circuit court's instruction was neither improper nor an abuse of discretion.

The circuit court instructed the jury on the elements of indecent exposure as follows:

Indecent exposure, it is an offense to willfully and intentionally expose in public the private parts of one's body to another person or persons. The State must prove beyond a reasonable doubt that: Number one, the Defendant willfully and intentionally exposed the private parts of his body, namely genitalia. This exposure must not have been accidental or inadvertent; two, the Defendant's act took place in public; and, three, at least one other person was present who saw or was likely to see the exposure when the Defendant exposed himself.

The Defendant's conduct occurred in public if it occurred at a place open or exposed to the view of the public where anyone who happened to be nearby could have seen Defendant's exposure if they had looked. That is the instruction for indecent exposure.

Rollins had asked the court to instruct the jury that the "conduct must have been shocking or offensive." The circuit court judge declined to propound the requested instruction, explaining that the instruction he intended to deliver "fairly and accurately represents the law." On appeal, Rollins asserts that the circuit court's failure to deliver his requested instruction constitutes reversible error. We disagree.

Rollins asserts that, in order for a defendant to be convicted of indecent exposure, the viewer must have been "shocked or offended" by the defendant's conduct, and, therefore, the jury should have been instructed accordingly. In support of his position, Rollins cites the case of *Wisneski v. State*, 398 Md. 578 (2007). In *Wisneski*, the Court of Appeals addressed whether the evidence was sufficient to support an indecent exposure conviction when a defendant "suddenly exposed his genitalia to three other people in [a] room [in a private home], who were not family members and who were deeply offended by that conduct." *Id.* at 580.

6

On appeal, Wisneski argued that he could not be convicted of indecent exposure because the exposure did not occur in a public place and the people who saw his genitalia were invited guests in a private home rather than "casual observers." The issue before the Court was whether "lewd conduct that occurred inside a private dwelling . . . can satisfy the 'public' element of the offense of indecent exposure." *Id.* The Court explained that a casual observer "is one who observes the defendant's acts unexpectedly" and that "the determining factor [for the 'public' element] is not the actual locale of the conduct, but rather the circumstances of the observation." *Id.* at 601, 604. In *Wisneski*, the Court emphasized that there was sufficient evidence to support Wisneski's conviction because Wisneski's conduct was "willful and deliberate and subject to actual observation by two of the people, one who became enraged while the other turned away. Both reactions reflect that the two of them were casual observers to Wisneski's exhibition and were offended by it, thereby establishing that Wisneski 'publicly' indecently exposed himself." *Id.* at 604.

Rollins asserts that *Wisneski* requires an additional element of indecent exposure, specifically, that an observer actually be "shocked" or "offended" by a defendant's exposure. We disagree. In our view, the *Wisneski* Court did not add an additional element to the common law offense of indecent exposure. The discussion of observers who were "shocked" or "offended" was within the context of explaining how, based on the facts and circumstances of a particular case, an exposure in a private home could satisfy the public element of indecent exposure.

Furthermore, we have cited to *Wisneski* when listing the elements of indecent exposure as "(1) a public exposure; (2) made willfully and intentionally, as opposed to

7

inadvertently or accidentally; (3) which was observed, or was likely to have been observed, by one or more persons, as opposed to performed in secret, or hidden from the view of others." *Duran v. State*, 180 Md. App. 65, 78 (2008) (citing *Wisneski*, *supra*, 398 Md. at 593), *aff'd*, 407 Md. 532 (2009).[2] Indeed, the Court of Appeals also cited to *Wisneski* in identifying the elements of indecent exposure, explaining:

> We already have had occasion to address the origins of the crime of indecent exposure as well as analyze its elements in *Wisneski v. State*, 398 Md. 578, 589, 921 A.2d 273, 279 (2007), wherein we noted that the misdemeanor offense of indecent exposure was "originally derived from English common law when our Declaration of Rights was adopted on November 3, 1776." In *Wisneski*, while addressing whether indecent exposure had to occur in a public place, we clarified that "[t]he authorities . . . are in substantial accord that at the common law indecent exposure was the wil[l]ful and intentional exposure of the private parts of one's body in a public place in the presence of an assembly," so that "its main elements were the *wil[l]ful exposure*, the *public place* in which it was performed, and the *presence of persons* who saw it." *Id.* at 591, 921 A.2d at 280-81.

*State v. Duran*, 407 Md. 532, 552 (2009) (footnote omitted).

Neither the Court of Appeals nor this Court has ever articulated an additional element of indecent exposure requiring that a viewer be shocked or offended by the exposure. Contrary to Rollins's assertion, the offense of indecent exposure does not require that a viewer be shocked or offended. The circuit court, therefore, properly declined to

_____

[2] Further, requiring that an observer be "shocked" or "offended" would be incongruous because an actual observation of an intentional public exposure is not required. Indeed, all that is required is that the public exposure be "likely to have been observed." *Duran*, *supra*, 180 Md. App. at 78.

propound Rollins's requested instruction, as the requested instruction was premised upon an incorrect statement of law.

Rollins further argues that the circuit court abused its discretion by declining to specifically instruct the jury that the statutory definition of "public place" provided for the offense of disorderly conduct should not be applied to the "public" element of the indecent exposure. As we shall explain, the circuit court acted within its broad discretion when it declined to instruct the jury in the manner requested by Rollins.

As we discussed *supra*, the circuit court instructed the jury that one of the elements of indecent exposure was that "the [d]efendant's act took place in public." The circuit court explained that "[t]he Defendant's conduct occurred in public if it occurred at a place open or exposed to the view of the public where anyone who happened to be nearby could have seen Defendant's exposure if they had looked."

The circuit court's instruction on the elements of the offense of disorderly conduct, which had been given prior to the instruction on the elements of indecent exposure, also addressed an element relating to public places.[3] Specifically, with respect to the offense of disorderly conduct, the circuit court instructed the jury that a "public place means a place to which the public or a portion of the public has access and a right to resort for business, dwelling, entertainment or other lawful purpose." The circuit court's instruction continued by identifying various examples of public places, including "a hotel or motel." After

---

[3] In Part II of this opinion, we address the State's argument that it was not actually required to prove that Rollins acted in a public place or public conveyance for the modality of disorderly conduct with which Rollins was charged.

9

identifying the various examples, the circuit court ended its disorderly conduct instruction by stating, "That is disorderly conduct."

The circuit court clearly explained the definition of "in public" to be applied within the context of indecent exposure and the separate definition of "public place" to be applied within the context of disorderly conduct. Furthermore, the jury was provided with written copies of the jury instructions on the offenses of disorderly conduct and indecent exposure, further reducing the likelihood of confusion. Whether or not to propound the specific clarifying instruction requested by Rollins was a discretionary determination for the circuit court, and, as such, "it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Bazzle*, *supra*, 426 Md. at 549. The circuit court clearly differentiated between the two separate offenses and the separate elements for each offense when instructing the jury. Accordingly, we hold that the circuit court acted within its discretion when declining to give the clarifying instruction requested by Rollins.

## II.

Rollins takes further issue with the circuit court's disorderly conduct instruction. The circuit court propounded the following instruction on the offense of disorderly conduct:

> As to disorderly conduct, it is an offense to willfully act in a disorderly manner that disturbs the public peace in certain public places. In order for the Defendant to be found guilty, the State must prove beyond a reasonable doubt that: Number one, the Defendant willfully acted in a disorderly manner to the disturbance of the public peace; two, the defendant acted in the actual presence of other persons; three, that the other person or

10

persons may have been disturbed or provoked to resentment; and, four, that the Defendant acted in a public place or a public conveyance.

The crime of disorderly conduct is the doing and/or saying of that which offends, disturbs, incites or tends to incite other persons gathered in the same area to the disturbance of the public peace.

A public place means a place to which the public or a portion of the public has access and a right to resort for business, dwelling, entertainment or other lawful purpose. Public place includes a restaurant, shop, shopping center, store, tavern, or other place of business; a public building; a public parking lot; a public street, walkway, or right of way; a public park or other public grounds; the common areas of a building containing four or more separate dwelling units, including a corridor, elevator, lobby, and stairwell; a hotel or motel; a place used for public resort or amusement, including an amusement park, golf course, racetrack, sports arena, swimming pool and theater; an institution of elementary, secondary or higher education; a place of public worship; a place or building used for entering or existing a public conveyance, including an airport terminal, bus station, dock railway station, subway station and wharf; and the public areas, sidewalks and other ground and structures, that are part of a public place. That is disorderly conduct.

The circuit court's definition of "public place" was based upon the enumerated examples of a "public place or conveyance" set forth in Md. Code (2002, 2012 Repl. Vol.), § 10-201 of the Criminal Law Article ("CL"). Rollins asserts that the circuit court erred by including the examples of "public place" enumerated in the statute.

The State first responds by arguing that the disorderly conduct instruction propounded by the circuit court was incorrect because, under the modality of disorderly conduct with which Rollins was charged, the State was not required to prove that Rollins acted in a public place or a public conveyance. Instead, the State asserts that it was required

11

to prove only that Rollins "willfully act[ed] in a disorderly manner that disturb[ed] the public peace." CL § 10-201(c)(2).[4] The State asserts that the circuit court erred by including this element in its instructions, but that by requiring the State to prove more than was required, any error inured to Rollins's benefit and does not require reversal.

Critically, whether or not the State was required to prove the "public place" element was not raised before or decided by the circuit court. Indeed, the prosecutor and defense counsel both asked the circuit court to instruct the jury on the "public place" element of disorderly conduct. This issue, therefore, is not properly before us on appeal, and we need not address it. *See* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court . . . .").[5]

We, therefore, turn our attention to Rollins's assertion that the circuit court's disorderly conduct instruction was not an accurate statement of the law, assuming that presence in a public place is an element of the modality of disorderly conduct with which

---

[4] Other modalities of disorderly conduct specifically refer to a "public place or conveyance." Section 10-201(c)(1) of the Criminal Law Article provides that "[a] person may not willfully and without lawful purpose obstruct or hinder the free passage of another **in a public place or on a public conveyance**." (Emphasis added.) Section 10-201(c)(5) of the Criminal Law Article provides that "[a] person from any location may not, by making an unreasonably loud noise, willfully disturb the peace of another: (i) on the other's land or premises; (ii) in **a public place**; or (iii) on **a public conveyance**." (Emphasis added.)

[5] We take no position whatsoever on the persuasiveness of the State's argument that the State was not required to prove that Rollins's conduct occurred in a "public place or conveyance."

12

Rollins was charged and convicted. Rollins and the State agreed on most of the language of the disorderly conduct instruction, but Rollins had proposed that the circuit court avoid listing the specific definitions of public place set forth in the statute and instead define "public place" as "a place to which the public or a portion of the public has access and a right to resort for business, dwelling, entertainment or other lawful purpose."[6] The prosecutor argued that it was appropriate for the circuit court to include the definition of "public place" from the statute, including the examples of public places that had been enumerated by the legislature. The circuit court gave the State's requested instruction, explaining that the language of the instruction "will track the statute."

On appeal, Rollins contends that the circuit court's instruction did not accurately reflect the law. Rollins asserts that the instruction should have articulated that only the portion of a hotel or motel to which the public has access is properly considered a public place under the statute. The State responds that the circuit court's instruction, which was a verbatim reading of the legislative definition of "public places," including those examples of public places provided by the legislature, was a correct statement of law. The State asserts that the plain language of the statute does not limit the definition of "public place" in the context of a "hotel or motel" in the manner suggested by Rollins.

We agree with the State's interpretation of the statute. If the General Assembly had intended to limit the definition of "public place" to only the common areas of a hotel or motel, it could have included limiting language. Indeed, the legislature included such

_____

[6] There is no Maryland pattern jury instruction on the offense of disorderly conduct.

13

limiting language in the context of apartment buildings, defining a public place as "the common areas of a building containing four or more separate dwelling units, including a corridor, elevator, lobby, and stairwell." CL § 10-201(a)(3)(ii)(6). In contrast, the language regarding hotels or motels includes no limiting language, instead providing that a "[p]ublic place includes . . . a hotel or motel." CL § 10-201(a)(3)(ii)(7). We hold, therefore, that, assuming that presence in a public place is an element of the modality of disorderly conduct with which Rollins was charged and convicted, the circuit court's disorderly conduct instruction, including the legislatively enumerated examples of "public places," was a correct statement of law. The circuit court, therefore, did not abuse its discretion in instructing the jury accordingly.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**